**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-2986

POLLY BACA and ROBERT NEMANICH,

Plaintiffs

v.

JOHN W. HICKENLOOPER JR., in his official capacity as Governor of Colorado, CYNTHIA H. COFFMAN, in her official capacity as Attorney General of Colorado, and WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State.

Defendants.

**MOTION BY PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

"Are these electors free to vote for whomever they wish? The simple answer is yes."

– Senator Mitch McConnell[1]

Plaintiffs move for entry of a temporary restraining order and preliminary injunction, pursuant to Fed. R. Civ. P. 65(a) and (b). The following grounds support this Motion:

**I.  CERTIFICATE OF COMPLIANCE WITH D.C.COLO.L.CivR 65.1**

The undersigned hereby certifies that, pursuant to D.C.Colo.L.Civ.R 65.1 (including 7.1A), actual notice of the time of filing of this Motion and copies of all pleadings and papers filed in the action to date have been provided to defendants. In this regard, undersigned counsel, through an authorized process server, personally served the Complaint, civil cover sheet, this

---

[1] Gregg, Gary L. II, Securing Democracy; Why We Have an Electoral College, at p. xxi (2008 ed).

Motion, exhibits to this Motion, the proposed order, and the Information for Temporary Restraining Order (form).

## II.     SCHEDULING OF HEARING(S)

Plaintiffs request the sought injunction will be determined as soon as possible based on the evidence submitted and a hearing on this matter occur on December 9th, December 12th, or December 15th. In addition, Plaintiffs and their counsel can attend a hearing on the weekends of December 10/11 and December 17/18. A hearing and order must be issued before the electors meet on December 19, 2016 to avoid irreparable harm.

## III.    INTRODUCTION

This case concerns the infringement of Defendants on Plaintiffs' constitutional right to vote as electors for whomever Plaintiffs believe to be the best and most qualified persons for the offices of President and Vice-President of the United States of America. Infringement will operate through Defendants' enforcement of C.R.S. § 1-4-304.

Plaintiffs were nominated and selected to be presidential electors for 2016 by the members of the Colorado Democratic Party, pursuant to its rules, at the party convention/assembly in April 2016. *See* Complaint at Exhibit 1, Plaintiff Affidavits. As part of their nomination and selection, Plaintiffs were obligated to sign a pledge to vote for the Democratic Party nominees if the majority of the people in Colorado voted for such nominees on November 8, 2016. *Id.*

Plaintiffs believe that the Republican nominees for President and Vice-President, Donald Trump and Mike Pence, represent a unique danger to the Republic and embody the very reason why the Founders created the Electoral College. Plaintiffs' have the right under the Constitution,

2

as electors, to vote for the candidates that they believe are most fit and qualified to run this country, even if that means voting for someone other than the Democratic nominees if doing so can help avoid Trump/Pence from ascending to the highest offices in the Executive Branch.

The Defendants seek to compel Plaintiffs to vote for a specific set of candidates, Hillary Clinton and Tim Kaine. While Plaintiffs may vote for them, Plaintiffs have a constitutional right to vote for whomever they freely choose and cannot be compelled to vote for any candidate. The danger presented by the Trump/Pence ticket is unique in our nation's history and Plaintiffs seek the ability to exercise their constitutional right so as to prevent these demagogues from rising to power. Plaintiffs have asked the Secretary of State if they can vote their conscience, and the Secretary has, in essence, said no because if they do they will be removed as electors and replaced. *See* Complaint at Exhibit 1, Plaintiff Affidavits (Exhibit A thereto), email from Secretary of State. Thus, Plaintiffs are forced to bring this legal action and seek this injunction to protect their rights, the Constitution, and the Republic.

**IV.   RELEVANT FACTS**

Contemporaneously herewith, Plaintiffs have filed the *Verified Complaint for Declaratory and Injunctive Relief* (the "**Complaint**") seeking the Court's declaration of their rights as electors under C.R.S. § 1-4-304 and seeking temporary, preliminary, and permanent injunctive relief.

Attached to the Complaint as Exhibit 1 are the *Affidavits of Polly Baca, Robert Nemanich*, which are incorporated herein by reference. In them, Plaintiffs affirm as true and correct to the best of their information, knowledge, and belief all factual allegations set forth in the Complaint, authenticates and lays the requisite foundations for documents attached thereto.

**V.   STANDARD OF REVIEW**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 19 (2008).

"In order to merit a preliminary injunction, Plaintiff must establish that: (1) it has a substantial likelihood of prevailing on the merits; (2) it will suffer irreparable injury if it is denied the injunction; (3) its threatened injury outweighs the injury that the opposing party will suffer under the injunction; and (4) an injunction would not be adverse to the public interest." *Country Kids 'N Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1283 (10th Cir. 1996).

As in this instance, "'[w]here the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction.'" *Stine v. Lappin*, 2009 WL 482630, *2 (D. Colo. Feb. 25, 2009) (citation omitted).

**VI.    ARGUMENT**

"[V]oting is the most fundamental significance under our constitutional structure."

*llinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979).

**A.    Substantial Likelihood of Prevailing on the Merits**

Plaintiffs are substantially likely to prevail on the paramount issue that Colorado's elector binding statute, C.R.S. § 1-4-304(5), is unconstitutional because it violates Article II of the U.S. Constitution, as amended by the Twelfth Amendment, and it compels speech in violation of the First Amendment. "Obviously we must reject the notion that Art. II, § 1, gives the States power to impose burdens on the right to vote, where such burdens are expressly prohibited in other constitutional provisions." *Williams v. Rhodes*, 393 U.S. 23, 29 (1968).

4

*1. The Electoral College is Superfluous if Electors are Forced to Vote for Certain Candidates.*

"[P]olitical parties in the modern sense were not born with the Republic. They were created by necessity, by the need to organize the rapidly increasing population, scattered over our Land, so as to coordinate efforts to secure needed legislation and oppose that deemed undesirable." *Ray v. Blair*, 343 U.S. 214, 220-21, (1952).[2] "The presidential electors exercise a federal function in balloting for President and Vice-President but they are not federal officers or agents any more than the state elector who votes for congressmen. They act by authority of the state that in turn receives its authority from the Federal Constitution." *Id.* at 224-25. Thus, though the states have authority to appoint electors pursuant to Article II § 1, that power cannot "be exercised in such a way as to violate express constitutional commands that specifically bar States from passing certain kinds of laws." *Rhodes*, 393 U.S. at 29.

The Court in *Ray* found requiring electors to sign a pledge to certain candidates was valid and constitutional, but explicitly left open the question of enforcement of statutes like Colorado's: "However, even if such promises of candidates for the electoral college are legally unenforceable because violative of an assumed constitutional freedom of the elector under the Constitution, Art. II, § 1, to vote as he may choose in the electoral college, it would not follow that the requirement of a pledge in the primary is unconstitutional." *Ray,* 343 U.S. at 230.

Only electors vote for the President and Vice-President. *See* U.S. Const. Art II § 1; U.S. Const. Amend. XII. The electoral college was created to be separate, a "small number of persons

---

[2] *Ray* came about when the Democrats in Alabama in the 1948 presidential election refused to vote for Truman because of the pro-civil rights platform, and, instead, voting for Strom Thurmond and forming the Dixiecrats. The party thereafter instituted a pledge for electors that they vote for the party's nominee.

5

selected by their fellow-citizens … most likely to possess the information and discernment requisite to so complicated an investigation" who choose the President and Vice-President. The Federalist No. 68, at 412 (Alexander Hamilton) (Clinton Rossiter ed., 1961). The electors act "under circumstances favorable to deliberation." *Id.*[3] The electors would be insulated from "mischief," "tumult," and "disorder." *Id.* The electors would be less exposed "to heats and ferments" of the people. *Id.* The Electoral College creates an "obstacle … to cabal, intrigue, and corruption." *Id.* Chief among the reasons for the Electoral College was to prevent "foreign powers" from "gain[ing] an improper ascendant in our councils," might be achieved "by raising a creature of their own to the chief magistracy of the Union." *Id.* at 412-13. The electors were to "vote for some fit person as President." *Id.* at 413. Thus, the country would be

> "afford[ed] a moral certainty that the office of President will seldom fall to the lot of any man who is not in an eminent degree endowed with the requisite qualifications. Talents for low intrigue, and the little arts of popularity, may alone to suffice to elevate a man to the first honors in a single State; but it will require other talents, and a different kind of merit, to establish him in the esteem and confidence of the whole Union …."

*Id.* at 414.

Statutes such as Colorado's, which require electors to vote for a party's slate of candidates lest the elector be removed or otherwise punished, render the electoral college superfluous, which violates one of the basic cannons of Constitutional law and statutory interpretation. *See Hurtado v. California*, 110 U.S. 516, 534 (1884) (absent clear reason, a court cannot assume a part of the Constitution is superfluous). The Founders did not draft the

---

[3] The electors were excluded from being "those who from situation might be suspected of too great devotion to the President in office." Id. Thus, it is better that members of the Electoral College be ordinary citizens such as Plaintiffs, as opposed to even state political office holders who would always stand to personally benefit by devoting themselves to the President.

6

Constitution so that the President and Vice-President were directly elected by the majority of the popular vote. At most, "the sense of the people should operate in the choice of" President. *Id.* Instead, they created the Electoral College.

If the electors in Colorado are required to vote for the candidate that wins the majority of the popular vote in Colorado, the electors serve no purpose and are rendered superfluous. After all, what's the point of electors if they serve only as a rubber stamp for the popular vote? Surely there can be no "deliberation" as a rubber stamp, for there is nothing to deliberate about. No "investigation" can occur if there's nothing to investigate because the electors have no say in who becomes President. There's no need to insulate electors from the "mischief," "tumult," "disorder," "heats and ferments" of an election and the populace if they are forced to vote for the same people that "won" the majority vote by exploiting such heats, ferments, and disorder.

In Federalist No. 68, Hamilton admitted the electoral college system he had helped create was not "perfect" but it was "at least excellent." *Id.* Through the early part of the Republic, the Founders realized some flaws in Article II § 1 and it was ultimately amended by the Twelfth Amendment, which changed the means by which the House and Senate voted. Despite the significant changes to the machinations of the electoral college, nothing changed the fact that the electors were to remain an independent, deliberative, and investigative body. *See* IS THE UNIFORM FAITHFUL PRESIDENTIAL ELECTORS ACT CONSTITUTIONAL*?,* 2016 Cardozo L. Rev. De Novo 129, 132-133, 147-148.

Plaintiffs are substantially likely to succeed on their claim because C.R.S. § 1-4-304 undermines, is inconsistent with, and renders superfluous the Electoral College in Article II § 1 of the Constitution and the Twelfth Amendment.

*2. Colorado's Binding Statutes Violate the Fourteenth Amendment.*

According to the 2010 census, Colorado's population is 5,029,196. *See* http://www.census.gov/quickfacts/table/PST045215/08.[4] Colorado is entitled to nine electors in the Electoral College – one for its seven Congressional Districts and two for each Senator. Wyoming's 2010 census population was 563,626.[5] Wyoming has three electoral votes – one for its at-large Congressional District and two for each Senator. Thus, though Colorado is nearly nine times larger than Wyoming, it has only three times the electors as Wyoming. In other words, the Plaintiffs' votes are worth 1/3 of the Wyoming electors' votes.

Nothing in the Constitution requires or even contemplates that states are to award all of its electoral votes to the candidate who won the majority of the state's popular vote. To the contrary, the Constitution only allows states to conduct elections in a manner that is consistent with, and do not violate, other provisions of the Constitution, including the Fourteenth Amendment's equal protection clause. *See Rhodes*, 393 U.S. at 29 (though Article II § 1"does grant extensive power to the States to pass laws regulating the selection of Electors …. these granted powers are always subject to the limitation that they may not be exercised in a way that violates other specific provisions of the Constitution. .… Nor can it be thought that the power to select Electors could be exercised in such a way as to violate express constitutional commands that specifically bar States from passing certain kinds of laws."). "When the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed

---

[4] This Court can take judicial notice of census statistics. *We Fong Yue Ting v. United States*, 149 U.S. 698, 734 (1893) (Brewer, J. dissenting); *Skolnick v. Bd. of Comm'rs*, 435 F.2d 361, 363 (7th Cir. 1970).

[5] *See* http://www.census.gov/quickfacts/table/PST045215/56.

8

is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter." *Bush v. Gore*, 531 U.S. 98, 104 (2000). "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id.* at 104-105. "[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

Colorado's binding statute, and similar statutes across the country, violate the Equal Protection Clause of the Fourteenth Amendment because they unconstitutionally dilute and debase the weight of Colorado's electors' votes. Therefore, Plaintiffs are substantially likely to succeed on the merits of their claim.

### 3. *Colorado's Binding Statute Violates the First Amendment.*

Alexander Hamilton tells us that electors are to vote their free will and the Founders were fearful of and keen to prevent a demagogue:

> "dangerous ambition more often lurks behind the specious mask of zeal for the rights of the people than under the forbidden appearance of zeal for the firmness and efficiency of government. History will teach us that the former has been found a much more certain road to the introduction of despotism than the latter, and that of those men who have overturned the liberties of republics, the greatest number have begun their career by paying an obsequious court to the people; commencing demagogues, and ending tyrants."

Federalist No. 1, Hamilton.

Colorado's elector binding statute, C.R.S. § 1-4-304, enables demagogues, compels the electors, in contravention of the First Amendment, to vote for them, and eliminates debate among the electors on the vital public issue of who should be President.

"Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995). Such speech "occupies the core of the protection afforded by the First Amendment." *Id.* "When a law burdens core political speech, we apply "exacting scrutiny," and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest." *Id.* at 347. There is a fundamental "right of qualified voters within a state to cast their ballots and have them counted." *U.S. v. Classic*, 313 U.S. 299, 315 (1941).

Any statute that requires people to vote a certain way eliminates political debate in violation of the First Amendment. The Electoral College's purpose is "deliberation" and "investigation." Federalist No. 68. Under Colorado's binding statute, there is no deliberation or investigation to be done because the electors are bound to vote for specific candidates no matter what. Thus, C.R.S. § 1-4-304 improperly burdens elector's core political speech. The law also improperly compels electors to vote in a certain way.[6]

The electors are nominated and elected by private political parties. Thus, the state itself has little state interest in determining who they are and what they believe. The state is not a political party and has no interest in who people vote for. The state's only interest is running fair elections in which people are given as much opportunity to vote free from harassment. For example, Colorado has a constitutional law that prohibits electioneering within 100 feet of a

---

[6] Some might argue that restrictions on the right to vote are not subject to strict scrutiny. *See Burdick v. Takushi*, 504 U.S. 428, 432 (1992). However, these cases all deal with the procedure of voting, *i.e.*, early voting, voting identification, place of voting, etc. No case has ever found that laws compelling for whom someone votes are constitutional under any level of scrutiny. Put another way, no state law could be constitutional that requires people who registered as Republicans to vote only for Republicans. There's no difference between that hypothetical law and C.R.S. § 1-4-304.

polling place. *See* C.R.S. § 1-13-714. This is constitutional, in part, because it protects the person's ability to vote for their candidate of choice. In contrast, C.R.S. § 1-4-304 **requires** electioneering when it comes to the electors – it requires that electors who don't vote a certain way are forced to do so or resign their positions, thus ensuring someone votes the way the state seeks to compel them. It's difficult to imagine a more impermissible law than one that requires someone to vote for a specific candidate. The concept is antithetical to the notion of democracy, free speech, and the Electoral College.

This Court must find the challenged law advances a compelling state interest, though none exists, and is narrowly tailored. No such law could be sufficiently narrowly tailored because the law seeks to do that which cannot be done – compel someone to vote a specific way. Tailoring the law to require voters cast ballots for only a certain political party advances no state interest because the State itself has no interest in which political party governs it (though its agents and elected officials do).

Because C.R.S. § 1-4-304 violates the First Amendment, Plaintiffs have a substantial likelihood of succeeding on the merits.

### B.     Irreparable Harm

"In federal courts, the moving party must show irreparable injury in order to obtain a preliminary injunction. Injury is generally not irreparable if compensatory relief would be adequate. Thus, [Plaintiffs] must show not only that [they are] injured by the failure to issue the preliminary injunction, but also that damages are not adequate to compensate that injury." *Tri-State Generation*, 805 F.2d at 355.

Plaintiffs will suffer irreparable injury if a preliminary injunction is not issued because they will be removed as electors if they do not vote for Hillary Clinton and Tim Kaine and will not be allowed to vote as electors again in this election. No monetary damages can fix that. The Plaintiffs spent myriad hours, expended great personal effort, and incurred personal expense to attend the various caucuses, assemblies, and conventions to become electors. Their fellow citizens voted for them as electors, in part, because they could be trusted to do what was right and vote not just for default candidates, but for someone whom Plaintiffs believe to be the best suited to run the country. Removing and replacing Plaintiffs if they don't vote for Hillary Clinton and Tim Kaine cannot be undone. Thus, there is irreparable harm.

### C.    Balance of Hardships

"The third prong of a standard preliminary injunction inquiry requires [Plaintiffs] to demonstrate that the balance of harms weighs in [their] favor, and that denying the injunction will cause more harm than granting it." *Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1260 (D. Colo. 2005) (citation omitted).

No hardship will occur to Defendants or the State if the injunction is implemented. There will be no need to re-do the election. The election, when it comes to the President and Vice-President, exists for the people to vote for the electors, including Plaintiffs. The Colorado Constitution, Schedule, Section 20 states that "after the year [1876] the electors of the electoral college shall be chosen by direct vote of the people." Though people cast their ballots for presidential and vice-presidential candidates, they were voting for electors specific to political parties/candidates. It is up to those electors, who have now been voted for by the people, to choose the best candidates. That is the design of the Constitution.

In contrast, great hardship will occur to Plaintiffs. Plaintiffs became electors to become personally involved in the political process beyond simply voting on November 8, 2016. They believed they were well-suited to serve as electors to find and vote for the candidates best suited for the offices of President and Vice-President. If removed and replaced, Plaintiffs will be barred from fulfilling their role as electors and voting for the most fit and qualified candidates.

### D.     Public Interest

"The final showing that [Plaintiffs] must make is that the preliminary injunction will not be adverse to the public interest."  *Doubleclick*, 402 F.Supp.2d at 1260 (citation omitted). A preliminary injunction not be adverse to the public interest; in fact, the public interest will be served by an injunction and would be greatly disserved if the injunction is not issued.

The public has an interest in making sure that fit and competent leaders are elected. The majority of voters of this state and this country voted for Hillary Clinton and Timothy Kaine – people are who are fit and competent. However, there is great risk that if every elector in every state votes consistent with the popular vote in their respective states, Hillary Clinton and Timothy Kaine not only won't be elected, but people whom Plaintiffs believe, based on their deliberation and investigation, are neither fit nor competent will become President and Vice-President. Thus, the electors must be free to choose to vote for the most viable, fit, and competent persons for office, even if those persons are not Hillary Clinton or Timothy Kaine. To force them to vote for candidates who may not prevail for the sake of party allegiance, which the State has no interest in, harms the public's interest in making sure electors do their constitutional duty – elect fit, competent, and qualified candidates.

## VII.    SECURITY IS UNNECESSARY

Federal Rule of Civil Procedure 65(c) requires that the Court consider imposing an injunction bond for an enforceable order for preliminary injunctive relief. Defendants cannot show "a likelihood of harm" if the preliminary injunction issues, and Plaintiffs have shown that absent an injunction their rights will be irreparably harmed. Thus, Plaintiffs respectfully submit that no security is necessary. *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) ("[A] trial court may, in the exercise of discretion, determine a bond is unnecessary to secure a preliminary injunction 'if there is an absence of proof showing a likelihood of harm.'") (citation omitted).

WHEREFORE, Plaintiffs respectfully request that the Court hear and consider this Motion, and thereupon enter an Order:

A. temporarily and preliminarily enjoining and restraining Defendants, and each of their principals, officers, agents, servants, employees, attorneys-in-fact, attorneys-in-law, contractors, consultants, distributors, and any and all persons under the control or in active concert or participation with Defendants, jointly or severally, who receive actual notice of the Court's order or judgment by personal service or otherwise, from removing or replacing Plaintiffs as electors, compelling them to vote for certain candidates, precluding them from voting for any candidates, or otherwise interfering with the vote of the electors on December 19, 2016;

B. waiving the security requirement of Fed. R. Civ. P. 65(c);

C. declaring Colorado's binding statute, C.R.S. § 1-4-304 and any laws or regulations the intent, purpose, or effect of is to preclude Plaintiffs or other electors from

exercising their judgment and free will in voting for whichever candidates Plaintiffs choose for President and Vice-President;

D.      for such other and further relief as the Court deems just and proper under the circumstances.

Dated this 6th day of December, 2016.

Respectfully submitted,

By:     */s/ Jason B. Wesoky*
Jason B. Wesoky, Esq.
Attorney for Plaintiffs
1331 17th Street, Suite 800
Denver, CO  80202
Telephone: (303) 623-9133
Facsimile: (303) 623-9129
E-mail:  jwesoky@dmhlaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of December, 2016, a true and correct copy of the **MOTION BY PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** was filed with the Court and served via hand-delivery on the following:

John W. Hickenlooper, Jr., in his official capacity as Governor of Colorado
Attn: Governor Hickenlooper
Colorado Governor's Office
200 E. Colfax Avenue
Denver, CO 80203

Cynthia H. Coffman, in her official capacity as Attorney General of Colorado
Office of the Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Building
1300 Broadway, 10th Floor
Denver, CO 80203

Wayne W. Williams, in his official capacity as Colorado Secretary of State
Office of Colorado Secretary of State
1700 Broadway, Suite 200
Denver, CO 80290

*/s/ Audrey Dakan*
Audrey Dakan, Paralegal