IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-2986-WYD-NYW

**POLLY BACA** and **ROBERT NEMANICH**,
    Plaintiffs,
v.

**JOHN W. HICKENLOOPER, JR.**, in his official capacity as Governor of the State of Colorado; **WAYNE W. WILLIAMS**, in his official capacity as Colorado Secretary of State; **CYNTHIA H. COFFMAN**, in her official capacity as Colorado Attorney General,
    Defendants.

### RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

Nearly eight months ago, Plaintiffs Polly Baca and Robert Nemanich sought the Colorado Democratic Party's nomination as presidential electors. As a condition of accepting that nomination, Baca and Nemanich pledged that, if they were elected as presidential electors, they would cast their ballots in the Electoral College for the Democratic candidates for President and Vice-President. This promise was consistent with longstanding Colorado law, which requires presidential electors to vote for the candidates for President and Vice-President who received the highest number of votes in the general election. Colo. Rev. Stat. § 1-4-304(5).

Baca and Nemanich do not allege that they were uneasy about this pledge when they signed it. Nor do they claim that they had misgivings about complying with state law during the seven months that elapsed between their nomination and the general election. It is only now, after the outcome of the Presidential election is certain, that they have apparently developed second thoughts. This Court should not countenance Plaintiffs' attempt to dismantle the Electoral College from within. It should reject as an affront to this nation's model of democracy this effort to disenfranchise millions of Coloradans by usurping their collective choice of candidates and replacing it with Plaintiffs' own personal opinions about who is fit for the office

of President. Holding otherwise would cause chaos. This Court should decline Plaintiffs' invitation to alter the status quo by converting the popular vote into a mere advisory opinion that presidential electors are free to ignore.

## FACTS AND PROCEDURAL BACKGROUND

In Colorado, as in every state, votes in the Presidential election are cast not for individual candidates, but for a slate of electors nominated by each candidate's political party. Colo. Rev. Stat. § 1-4-301 ("at the general election…the number of presidential electors to which the state is entitled shall be elected"). Although the President and Vice-President candidates' names appear on the ballot, rather than the electors' names, the ballot provides that votes are cast for the "Presidential Electors" supporting the listed candidates. Exhibit A (noting votes are cast for "Presidential Electors"). The presidential electors who are elected convene in the State Capitol at noon "on the first Monday after the second Wednesday in the first December following their election…take the oath required by law" and proceed to vote for President and Vice-President by open ballot. Colo. Rev. Stat. § 1-4-304(1). "Each presidential elector *shall* vote for the presidential candidate and, by separate ballot, vice-presidential candidate who received the highest number of votes at the preceding general election in this state." Colo. Rev. Stat. § 1-4-304(5) (emphasis added). An elector's "refusal to act," however, will result in a vacancy. *Id.* at § 304(1).

Plaintiffs allege that they accepted the Democratic Party's nomination as presidential electors on April 16, 2016, and that when they did so they "were required to sign an affidavit … affirming that they would cast their [presidential elector] ballots on December 19, 2016 for the Democratic Presidential and Vice Presidential candidates." Doc. 1, ¶¶ 11, 12. Plaintiffs were elected, but are now trying to circumvent state law and their pledges by arguing that the First and

2

Fourteenth Amendments, as informed by their reading of various secondary sources, guarantee the right of presidential electors to vote their conscience. Plaintiffs seek entry of a preliminary injunction that would prohibit Defendants "from removing or replacing Plaintiffs as electors, compelling them to vote for certain candidates, or otherwise interfering with the vote of the electors on December 19, 2016." Doc. 2 at 14.

## PRELIMINARY INJUNCTION STANDARD

Because "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Schrier v. Univ. Of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quotation omitted). Plaintiffs must establish (1) a substantial likelihood of success on the merits, (2) that they will suffer irreparable injury if the preliminary injunction is denied, (3) that the threatened injury to Plaintiffs outweighs the injury caused by the injunction, and (4) that an injunction is not adverse to the public interest. *Id.* at 1115.

The plaintiff bears the burden of proof to demonstrate that each factor tips in his or her favor. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188–89 (10th Cir. 2003). Where, as here, the requested injunction falls into one of three specifically disfavored categories—preliminary injunctions that alter the status quo, mandatory preliminary injunctions, and preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits—the motion "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier*, 427 F.3d at 1259 (quotations omitted).

## ARGUMENT

**I.     Plaintiffs do not have a substantial likelihood of success on the merits.**

Plaintiffs' motion for a preliminary injunction should be denied because they do not have a substantial likelihood of success on the merits. At the threshold, because Plaintiffs are state officers, they do not have Article III standing to challenge the constitutionality of a state law. Even if Plaintiffs do have standing, however, their claim fails on the merits.

**A.     Plaintiffs cannot prevail on the merits because this Court does not have subject matter jurisdiction over their claims.**

A plaintiff can only prevail on a claim if the court has subject matter jurisdiction. But as the U.S. Supreme Court has held, state officials lack Article III standing to challenge the constitutionality of state statutes when they are not personally affected by those statutes, and their interest in the litigation is official rather than personal. *See, e.g.*, *Columbus & Greenville Railway v. Miller*, 283 U.S. 96, 99-100 (1931); *see also Donelon v. Louisiana Div. of Admin. Law ex rel. Wise*, 522 F.3d 564, 566–67 (5th Cir. 2008). Colorado law is even more explicit. *Mesa Verde Co. v. Montezuma County Bd. of Equalization*, 831 P.2d 482, 484 (Colo. 1992) (holding that "political subdivisions of the state or officers thereof…lack standing to assert constitutional challenges to statutes defining their responsibilities").

Every court that has considered the issue has agreed that presidential electors are state officers. *See Fitzgerald v. Green*, 134 U.S. 377, 379 (1890) (holding that presidential electors "are no more officers or agents of the United States than are the members of the state legislatures when acting as electors of federal senators, or the people of the states when acting as electors of representatives in congress"); *Walker v. United States*, 93 F.2d 383 (8th Cir. 1937) (dismissing federal indictment because "presidential electors are officers of the state and not federal

4

officers"); *Chenault v. Carter*, 332 S.W.2d 623 (Ky. 1960) (holding that presidential electors are state officers under Kentucky law).

Nor is there any doubt that Plaintiffs' stake in this case is official rather than personal. In *Smith v. Indiana*, 191 U.S. 138 (1903), a county auditor contended that an Indiana property tax statute violated the Fourteenth Amendment. After the Indiana Supreme Court rejected the auditor's challenge, the Supreme Court granted certiorari but then concluded that it had no subject matter jurisdiction over the case. *Id.* at 148–49. *Smith* held that "the auditor had no personal interest in the litigation. He had certain duties as a public officer to perform. The performance of those duties was of no personal benefit to him. Their non-performance was equally so." 191 U.S. at 148. So too here. While Plaintiffs declare their belief that it is their constitutional responsibility "to vote in the best interests of the state and nation," Doc. 1-1 at 3, "a public official's personal dilemma in performing official duties that he perceives to be unconstitutional does not generate standing." *Thomas v. Mundell*, 572 F.3d 756, 761 (9th Cir. 2009); *cf. Cooke v. Hickenlooper*, 2013 WL 6384218 (D. Colo. Nov. 27, 2013) (finding that county sheriffs lacked Article III standing to challenge constitutionality of Colorado firearms regulation).

As state officers whose official duties are prescribed by Colorado law, Plaintiffs lack Article III standing to challenge the constitutionality of the statute that prescribes those official duties.[1] Because they lack standing they have no likelihood of prevailing on the merits, and their motion for a preliminary injunction must be denied.

---

[1] Plaintiffs also lack standing for yet another reason: their alleged injury is entirely "conjectural" and far from redressable. *DaimerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006). It would require a significant number of presidential electors from other states to coalesce around a compromise candidate who received no votes in the November election. No standing exists

5

### B. Plaintiffs are unlikely to prevail on the merits of their claim that Colorado may not constitutionally bind the vote of Presidential Electors.

Plaintiffs contend that § 1-4-304(5), which binds the votes of presidential electors to the winner of Colorado's popular election, violates Article II of the U.S. Constitution, the Twelfth Amendment, the First Amendment, and the Fourteenth Amendment's Equal Protection Clause. Plaintiffs' arguments should be rejected because they are without merit.

#### i. The text of the U.S. Constitution permits binding of presidential electors.

The U.S. Constitution reserves to the States the right to decide for themselves how their presidential electors are selected and, if necessary, removed. Article II provides that "[e]ach state shall appoint, *in such manner as the Legislature thereof may direct*, a number of electors, equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress." U.S. Const. art II, § 1 (emphasis added). Nothing in the Twelfth Amendment, or any other amendment, abrogates this state power. *See Bush v. Gore*, 531 U.S. 98, 104 (2000) (confirming the States' power under Article II, § 1 is "plenary"). Thus, because the States alone have the power to appoint their presidential electors, they necessarily possess the power to attach conditions to that appointment. Binding them to the outcome of the State's popular vote is one such permissible condition.[2] *See* Beverly J. Ross & William Josephson, *The Electoral College and the Popular Vote*, 12 J. L. & POLITICS 665, 678 (1996) ("The states' constitutional power to appoint electors would appear to include the power to bind them"). And indeed it is the most

---

under such circumstances. *Cf. id.* (holding that plaintiffs lacked standing because their claim "depend[ed] on how legislators [would] respond" to a court order).

[2] Even Congress agrees that electors may be bound. It enacted legislation pursuant to the Twenty-third Amendment that binds the District of Columbia's presidential electors to the candidates who won the District's popular vote. *See* D.C. CODE ANN. § 1-1001.08(g)(2) (2016) (originally enacted in 1961, Pub L. No. 87-389, 75 Stat. 818).

popular condition, with 29 states and the District of Columbia opting to do so.[3] In the same vein, no constitutional provision bars a state from removing electors who refuse to comply with state law. *See, e.g.*, MICH. COMP. LAWS ANN. § 168.47 (2016) (stating that refusal or failure to vote for the presidential and vice-presidential candidates appearing on the ballot of the political party that nominated the elector constitutes "a resignation from the office of the elector"); N.C. GEN. STAT. § 163-212 (2016) (same); UTAH CODE ANN. § 20A-13-304(3) (2016) (same).

At best, Plaintiffs' position boils down to an argument that the U.S. Constitution is silent regarding binding or removing presidential electors. But if the Constitution is silent, the power to bind or remove electors is properly reserved to the States under the Tenth Amendment. U.S. Const. amend. X; *see McPherson v. Blacker*, 146 U.S. 1, 35–36 (1892) (stating "exclusive" State power over "mode of appointment" of electors "cannot be overthrown because the States have latterly exercised in a particular way a power which they might have exercised in some other way"); *cf.* Matthew J. Festa, *The Origins and Constitutionality of State Unit Voting in the Electoral College*, 54 VAND. L. REV. 2099, 2145 (2001) ("Given the clear Article II textual commitment to the state legislatures of the right to choose the manner of appointing electors, any legislation that impinges on the states' discretion to use the [winner-take-all allocation of electoral votes] would seem to run into this very same Tenth Amendment problem"). Colorado, like 28 other states and the District of Columbia, has chosen to exercise that power and bind its presidential electors to the candidates who won the State's popular vote. § 1-4-304(5). Plaintiffs cite no case, and Defendants are aware of none, striking down that choice as unconstitutional. Plaintiffs are therefore not substantially likely to prevail on the merits.

---

[3] National Conference of State Legislatures, *The Electoral College* (Aug. 22, 2016), *available at*: http://www.ncsl.org/research/elections-and-campaigns/the-electoral-college.aspx (last visited Dec. 7, 2016).

### ii. The U.S. Supreme Court and multiple lower courts permit binding of electors.

The lack of precedent supporting Plaintiffs' position should come as no surprise. The U.S. Supreme Court has upheld measures that bind presidential electors in circumstances that, while not identical, are similar to this case. *See Ray v. Blair*, 343 U.S. 214 (1952). In *Ray*, the Alabama legislature delegated to the political parties the authority to nominate electors. *Id.* at 217 n.2. Alabama's Democratic Party required its nominees for electors to pledge "aid and support" to the nominees of the National Convention of the Democratic Party for President and Vice-President. *Id.* at 215. The Court upheld this pledge requirement, finding "no federal constitutional objection" when a state authorizes a party to choose its nominees for elector and to "fix the qualifications for the candidates." *Id.* at 231. Thus, the Court refused to recognize a constitutional right for presidential electors to vote as they please in the Electoral College.

Plaintiffs assert that *Ray* "left open the question of enforcement" of statutes that bind presidential electors. Doc. 2 at 5. But enforceability by the State is not the issue here. Plaintiffs have brought this federal action to affirmatively *invalidate* § 1-4-304(5), a statute that has been on the books since 1959. *See* 1959 COLO. SESS. LAWS, p. 415; Doc. 1 at 7 (praying the Court "[e]nter an order declaring C.R.S. § 1-4-304(5) unconstitutional"). That they cannot do. Under *Ray*, if a state has the power to delegate its power to bind electors, it necessarily must have the authority to bind them itself. *See* Ross & Josephson, 12 J. L. & POLITICS at 696 ("[T]he Court's language and reasoning in *Ray v. Blair* strongly imply that state laws directly binding electors to a specific candidate are constitutional"). As such, Plaintiffs have not overcome the strong presumption favoring the constitutionality of Colorado's elector statute. *See Gilmor v. Thomas*, 490 F.3d 791, 798 (10th Cir. 2007).

Even if Defendants did assert a counterclaim to enforce § 1-4-304(5), Plaintiffs' arguments would still fail. Multiple lower courts have found state elector statutes like Colorado's to be enforceable. *See Gelineau v. Johnson*, 904 F. Supp. 2d 742, 748 (W.D. Mich. 2012) ("Though the [*Ray*] Court was not in a position to decide whether the pledge was ultimately enforceable, the opinion's reasoning strongly suggested that it would be"); *Thomas v. Cohen*, 262 N.Y.S. 320, 326 (Sup. Ct. 1933) ("The elector who attempted to disregard that duty could, in my opinion, be required by mandamus to carry out the mandate of the voters of his State"); *State ex rel. Neb. Republican State Cent. Comm. v. Wait*, 138 N.W. 159, 163 (Neb. 1912) (affirming writ of mandamus requiring the Secretary of State to print on the Republican line of the ballot the names of six replacement electors when the original Republican electors "openly declare[d]" they would vote in the Electoral College for another party's candidates). Each of these cases underscores the "bounden duty" imposed on electors to vote in the Electoral College for the candidates who won the State's popular vote. *Cohen*, 262 N.Y.S. at 326. So "sacred and compelling" is that duty—and so "unexpected and destructive of order in our land" would be its violation—that courts have recognized its performance amounts to a "purely ministerial" duty that may be compelled through a writ of mandamus. *Id.*

Accordingly, because the courts have uniformly recognized the constitutionality and enforceability of binding electors through statute, Plaintiffs are not substantially likely to prevail on the merits.

### iii. Binding electors does not violate the First Amendment.

Next, Plaintiffs contend that § 1-4-304(5) violates their right to engage in political speech under the First Amendment. Doc. 3 at 9–10. Plaintiffs' argument should be rejected because it risks stripping millions of Coloradans of their fundamental right to vote.

Initially, Plaintiffs' First Amendment argument should be rejected because they enjoy no First Amendment protection to speak in their official capacities as presidential electors. *See Garcetti v. Ceballos*, 126 S. Ct. 1951, 1960 (2006) ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any [First Amendment] liberties the employee might have enjoyed as a private citizen"). Any in any event, Plaintiffs identify no authority suggesting that casting a vote in the Electoral College is a First Amendment right deserving of this Court's protection. S*ee Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984) ("[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies"). The U.S. Supreme Court has made clear that it "cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). And conduct made illegal by a state is not unconstitutional simply because the activity purportedly involves elements of speech. *Giboney v. Empire Storage & Ice Co*., 336 U.S. 490, 502 (1949). Rather, the Court inquires whether an intent to convey a particularized message was present and whether the likelihood was great that the message would be understood by those who viewed it. *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Only "inherently expressive" conduct is extended First Amendment protection. *Rumsfeld v. Forum for Academic & Instit. Rights, Inc*., 547 U.S. 47, 66 (2006).

Casting a vote in the Electoral College is not "inherently expressive," but is instead "purely ministerial." *Thomas*, 262 N.Y.S. at 326; *see Spreckels v. Graham*, 228 P. 1040, 1045 (Cal. 1924) (electors "are in effect no more than messengers"). Nor is the likelihood "great" that a faithless elector's rejection of the outcome of the popular vote will be understood by those who

watch it. Even assuming Plaintiffs' faithless elector votes are publicly viewable, "[v]ery few know exactly when and where the meeting [of the Electoral College] takes place, and a great many have no knowledge of the gathering at all." *Cohen*, 262 N.Y.S. at 326.

But Plaintiffs' First Amendment argument fails for an additional, and more significant, reason: it seeks to deny Coloradans their fundamental right to vote for their chosen presidential and vice-presidential candidates. *See Hadley v. Junior College Dist. of Metro. Kansas City*, 397 U.S. 50, 56 (1970) ("[T]he Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election"); *Williams v. Rhodes*, 393 U.S. 23, 38 (1968) (stating the right to vote is a "fundamental political right"). This Court should reject Plaintiffs' attempt to do so.  First Amendment freedoms—even established ones, not present here—do "not extend to joining with others for the purpose of depriving third parties of their lawful rights." *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 776 (1994); *see also Int'l Longshoremen's Assoc., AFL-CIO v. Allied Int'l, Inc.*, 456 U.S. 212, 226 (1982) ("We have consistently rejected the claim that secondary picketing by labor unions in violation of [the National Labor Relations Act] is protected activity under the First Amendment"); *Schenck v. United States*, 249 U.S. 47, 52 (1919) ("The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic"). Regardless of the genuineness of Plaintiffs' steadfast belief that they know better than the rest of Colorado, their purported right to cast a faithless elector vote cannot defeat Coloradans' fundamental right to participate in the general election. Plaintiffs' claims must be rejected.

        **iv. Binding electors does not violate the Equal Protection Clause**

Plaintiffs also invoke the right to Equal Protection guaranteed by the Fourteenth Amendment. Doc. 2 at 8–9. They complain both that (1) less populous states like Wyoming

11

possess proportionally more electoral power than more populous states like Colorado; and (2) the "winner-take-all" system for awarding Colorado's nine electoral votes violates the Equal Protection Clause. This Court should reject both of these arguments.

Regarding their elector-dilution argument, the number of presidential electors in each state is prescribed in the federal Constitution. U.S. Const. art. II, § 1 (number of electors "equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress"). And because no injunction or other court order can alter this constitutional mandate, let alone add new Colorado electors, Plaintiffs' elector-dilution argument is simply not redressable by this Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (stating that Article III standing requires that "it must be likely, as opposed to merely speculative, that the [plaintiff's] injury will be redressed by a favorable decision." (internal quotation omitted)).

Plaintiffs' objection to Colorado's "winner-take-all" system—sometimes called the "unit voting rule"—similarly fails. *See Gray v. Sanders*, 372 U.S. 368 (1963); *see also* Festa, 54 VAND. L. REV. at 2103 (surveying authorities and concluding "the practice of unit voting may be changed only by a constitutional amendment or by the states individually"). In *Gray*, the Court addressed a challenge to Georgia's "county unit system" that, like the Electoral College, aggregated votes by county and then awarded all of the county's predetermined unit votes to the winner in each county. 372 U.S. at 370–71. Although the Court struck down Georgia's system as violating the Equal Protection Clause, it was exceedingly careful to distinguish the Electoral College as "inapposite." *Id.* at 378–80. The Electoral College was different, the Court explained, because of its explicit inclusion in the Constitution; its inclusion was the result of "specific historical concerns," which "validated the collegiate principle despite its inherent numerical inequality[.]" *Id.* at 378. Thus, the Constitution "sanctioned" the "weighting of votes" for

President and Vice President in the Electoral College, but not Georgia's county unit rule system. *Id.* at 380. In the wake of *Gray*, lower courts have repeatedly rejected challenges to the Electoral College's unit voting rule. *See Williams v. Va. State Bd. of Elections*, 288 F. Supp. 622, 627–29 (E.D. Va. 1968), *aff. mem.*, 393 U.S. 320 (1969); *Penton v. Humphrey*, 264 F. Supp. 250, 251–52 (S.D. Miss. 1967); *Lowe v. Treen*, 393 So.2d 459, 460–61 (La. Ct. App. 1st Cir. 1980). And the Supreme Court has refused to hear a direct, original action challenging its constitutionality. *See Delaware v. New York*, 385 U.S. 895 (1966) (per curiam). This Court should do the same.

### v. The Electoral College is not superfluous if Colorado law is followed.

Contrary to Plaintiffs' arguments, enforcement of Colorado's elector statute will not render the Electoral College "superfluous." Doc. 2 at 5. Plaintiffs fail to acknowledge that 21 states do *not* bind their presidential electors, seemingly granting them the discretion that Plaintiffs seek here. *See* National Conference of State Legislatures, *supra* note 3. But even if *all* states bound their electors, the system would still not be superfluous. Commentators have discussed at length the lasting benefits of the Electoral College, all while acknowledging that states may properly bind their electors. *See, e.g.*, John A. Zadrozny, *The Myth of Discretion: Why Presidential Electors Do Not Receive First Amendment Protection*, 1 COMMLAW CONSPECTUS 165, 179–83 (2003). Most notably, the Electoral College, much like the bicameral Congress, ensures that small states are not deprived of a meaningful role in selecting the President and Vice President. *See id.* at 180. The system therefore promotes "national unity" because it renders it more difficult for candidates to win using a "purely regional strategy." *Id.* at 181. Other benefits of the Electoral College include "hedg[ing] against fraudulent voting" practices that would become more prevalent under a purely popular vote system; encouraging finality while simultaneously discouraging contested outcomes on a national level, leading to "political

13

stability"; and "battling voter apathy" by permitting voters to participate in smaller voting pools within a given state. *Id.* at 181–83. Accordingly, because not all states bind their presidential electors, and because the Electoral College possesses benefits notwithstanding some states binding their electors, Plaintiffs are unlikely to prevail on the merits and their motion for a preliminary injunction should be denied.

## II.     Plaintiffs will not suffer irreparable harm if their motion is denied.

Plaintiffs assert that they "will suffer irreparable injury if a preliminary injunction is not issued because they will be removed as electors" if they do not vote for the winners of Colorado's popular vote. Doc. 2 at 12.  Their argument, however, incorrectly assumes that Colorado may not constitutionally bind their votes, and that removing them from office would run counter to their asserted individual First Amendment rights.

As previously discussed, presidential electors are state officials elected to perform a discreet, ministerial function—solely to vote for the presidential and vice-presidential candidates receiving the highest number of votes in the state. § 1-4-304(5); *Cohen*, 262 N.Y.S. at 326 ("The electors are expected to choose the nominee of the party they represent, and no one else"); *Wait*, 138 N.W. at 163 (Neb. 1912) ("Here the persons who have been nominated as presidential electors, having, if elected, but a single duty to perform, viz., to vote for the candidates nominated by the party by whose votes they were themselves nominated"); *Spreckels*, 228 P. at 1045 (Cal. 1924) ("[Electors'] sole function is to perform a service which has come to be nothing more than clerical – to cast, certify and transmit a vote already predetermined."). Plaintiffs admit that they were nominated by the Colorado Democratic Party and that they executed a pledge to support the Democratic nominees for President and Vice-President. Doc. 1-1. Moreover,

Plaintiffs understood that when voters selected candidates on the ballot, they were, in fact, selecting the slate of electors pledged to support those candidates. *Id.*

Plaintiffs' voluntary pledges, alongside their known obligations under § 1-4-304, were a promise to Colorado voters that they would support the Democratic ticket if it prevailed. When a majority of Coloradans supported that ticket on November 8, 2016, those voters reasonably and detrimentally relied on this promise, forming an implied contract. Charles L. Black Jr., *Forum Juridicum: The Faithless Elector – A Contracts Problem*, 38 LA. L. REV. 31, 32–33 (1977); *see also Spreckels*, 228 P. at 1044–45 (noting that an elector may have a public duty under an agency theory as well). Consequently, Plaintiffs should be estopped from breaching their agreement with the Colorado people.

In addition, even assuming that Plaintiffs have First Amendment rights as electors, they have voluntarily waived those rights by pledging to support the Democratic ticket. Contrary to Plaintiffs' arguments, First Amendment rights may be waived by the agreement of a party. *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991); *Snepp v. United States*, 444 U.S. 507, 513 (1980). For example, in *Cowles Media*, a plaintiff provided a defendant journalist with documents for a news story under a promise of confidentiality. 501 U.S. at 665 (1991). The plaintiff was fired from his job after the defendant breached this promise by publishing the plaintiff's name. *Id.* The U.S. Supreme Court concluded that the plaintiff's promissory estoppel claim was valid, reasoning that the First Amendment is not a constitutional license for entities to disregard promises that would otherwise be enforceable under state law. *Id.* at 672. As *Cowles Media* demonstrates, the concept of waiver extends to situations, such as this one, involving promissory estoppel. Furthermore, the *Cowles Media* decision has been favorably applied by the Colorado Supreme Court. *Pierce v. St. Vrain Valley Sch. Dist. RE-1J*, 981 P.2d 600, 604 (Colo.

1999) ("Colorado contract law, like the Minnesota doctrine of promissory estoppel, is law of general applicability. Here, the parties imposed their own restrictions on their ability to speak . . . . Enforcement of the settlement agreement does not violate the First Amendment, but merely applies the law of contract in Colorado, which 'simply requires those making promises to keep them.' [*Cowles Media*], 501 U.S. at 671."). Thus, § 1-4-304(5) does not abridge Plaintiffs' First Amendment rights because Plaintiffs have waived them. Plaintiffs are unable to demonstrate irreparable harm flowing from the violation of a right that they no longer possess.

### III. Because an injunction would be adverse to the public interest, the balance of harms favors denial of Plaintiffs' motion.

The constitutional crisis that Plaintiffs seek to create, and the resulting adverse effect upon the public interest, favors denial of Plaintiffs' requested preliminary injunction for at least two reasons: (1) Plaintiffs' eleventh hour claim is barred by laches, and (2) nullifying the results of Colorado's general election disserves the public interest.

#### a. Plaintiffs' eleventh hour claim is barred by laches.

"Laches consists of two elements: (1) inexcusable delay in instituting suit; and (2) resulting prejudice to defendant from such delay." *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 523 (10th Cir. 1987) (citing *University of Pittsburgh v. Champion Products, Inc.*, 686 F.2d 1040, 1044 (3rd Cir.), *cert. denied*, 459 U.S. 1087 (1982)). "Laches does not require actual knowledge on the part of the dilatory party," but rather may be applied when the party should have known the operative facts giving rise to the claim. *Yeager v. Fort Knox Sec. Prods.*, 602 Fed. Appx. 423, 428 (10th Cir. 2015). Where a party challenges the constitutionality of a law, laches may bar the claim if it is not brought within a reasonable time after enactment of the law. *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1476 (10th Cir. 1990) (untimely constitutional challenge to a 17-year-old zoning ordinance barred by laches).

Here, Plaintiffs challenge the constitutionality of § 1-4-304(5). The current version of this statute dates to August 8, 2001. *See* 2001 COLO. SESS. LAWS, p. 1002. And for over four decades between 1959 and 2001, Colorado law continuously required that "[e]ach presidential elector shall vote for the pair of presidential and vice-presidential candidates who received the highest number of votes at the preceding general election in this state." *See* 1992 COLO. SESS. LAWS, p. 675 (same); 1980 COLO. SESS. LAWS, p. 324 (same); 1963 COLO. SESS. LAWS, p. 460 (substantially similar wording as current version: "Each presidential elector shall be required to vote for the pair of presidential and vice-presidential candidates who received the highest number of votes at the preceding general election in Colorado."); 1959 COLO. SESS. LAWS, p. 415 (similar).

Plaintiffs should have known that, for more than half a century, Colorado law has required the State's presidential electors to vote for the presidential and vice-presidential candidates who won the general election popular vote in Colorado. *Thatcher*, 902 F.2d at 1476 (finding that "plaintiffs should have known of the zoning ordinance for approximately seventeen years"). And, at a minimum, they had actual knowledge of both Colorado's requirement that they do so and of the Colorado Democratic Party's requirement that they pledge to do so when they sought to become presidential electors at their party's convention on April 16, 2016. Despite this actual knowledge, Plaintiffs waited until December 6, 2016, which is less than two weeks before the date on which they will be required to cast their Electoral College votes, to bring their constitutional challenge to § 1-4-304(5).

As a result of this inexplicable delay, Defendants were afforded only three calendar days to develop and brief their defense to Plaintiffs' motion for a preliminary injunction, and will have had less than seven calendar days in which to prepare their evidentiary and legal defense for the

17

hearing on that motion. To say that Defendants are prejudiced by having to defend the constitutionality of Colorado's decades old law on such short notice when nothing less than the results of a Presidential election hang in the balance is an understatement. Plaintiffs' dilatory prosecution of their claims merits this Court's decision to bar them based on laches.

### b. The public interest does not favor nullifying the general election in Colorado.

Plaintiffs' complaint and motion for a preliminary injunction seeks to radically alter a status quo that has existed for more than half a century and give Plaintiffs license to overturn the will of Colorado's voters. Moreover, Plaintiffs demand this right of electoral fiat at the most disruptive moment possible—*after* they were nominated as presidential electors, *after* they pledged to support their party's nominees, *after* millions of Coloradans voted in the Presidential Election, and *after* the outcome of that election is clear.

It is difficult to imagine a greater public interest than certainty and confidence in the outcome of a Presidential election. *Gore v. Harris*, 772 So.2d 1243, 1261 (Fla. 2000) ("The need for prompt resolution and finality is especially critical in presidential elections"), *rev'd on other grounds*, 531 U.S. 98 (2000). Yet that is precisely the public interest that granting a preliminary injunction would undermine. Plaintiffs' request for a preliminary injunction should be denied.

Respectfully submitted this 9th day of December, 2016.

CYNTHIA H. COFFMAN
Attorney General

*s/ LeeAnn Morrill*
*s/ Matthew D. Grove*
s/ *Grant T. Sullivan*
LEEANN MORRILL, 38742*
First Assistant Attorney General
MATTHEW D. GROVE, 34269*
Assistant Solicitor General
GRANT T. SULLIVAN, 40151*
Assistant Solicitor General

Public Officials Unit / State Services Section
Attorneys for Defendants
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: 720 508-6000
FAX: 720 508-6041
E-Mail: leeann.morrill@coag.gov
matt.grove@coag.gov
grant.sullivan@coag.gov
*Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2016, I served a true and complete copy of the foregoing Response to Motion for Preliminary Injunction upon all parties through ECF:

Jason Wesoky
1331 17th Street, Ste. 800
Denver, CO 80202
*Attorney for Plaintiffs*

*s/ Terri Connell*