IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.    16-cv-02986-WYD-NYW

POLLY BACA and
ROBERT NEMANICH,

      Plaintiffs,

v.

JOHN W. HICKENLOOPER JR., in his official capacity as Governor of Colorado;
CYNTHIA H. COFFMAN, in her official capacity as Attorney General of Colorado; and
WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State,

      Defendants.

---

## ORDER

---

I.   <u>INTRODUCTION</u>

      THIS MATTER is before the Court on Motion by Plaintiffs for Temporary Restraining Order and Preliminary Injunction (ECF No. 2), filed December 6, 2016.   A hearing was held on December 12, 2016, at the end of which I orally denied Plaintiffs' motion.   Plaintiffs filed an emergency motion with the Tenth Circuit Court of Appeals, filed December 13, 2016, seeking an injunction pending appeal.   For the reasons noted in its December 16, 2016, Order, the Tenth Circuit denied Plaintiffs' emergency motion for injunction pending appeal.   Therefore, the sole purpose of this Order is to state in a written order why Plaintiffs' request for injunctive relief was denied.

      Plaintiffs are two of the nine appointed presidential electors, selected to vote for the candidates that received the majority of Colorado's electorate vote.   (*See* Compl., ECF No. 1).   On Tuesday, November 8, 2016, Hillary Clinton and Timothy Kaine won the

majority of Colorado's votes, and as such, the Democrat Party's presidential electors are tasked with the duty to cast their votes for them when the Electoral College meets on Monday, December 19, 2016.   Plaintiffs argue that Colorado's binding presidential elector statute, Colo. Rev. Stat. § 1-4-304(5), violates Article II of the U.S. Constitution, the Twelfth Amendment, the First Amendment, and the Fourteenth Amendment's Equal Protection Clause because they are "forced" to vote for the Clinton-Kaine ticket and will be removed from their position if they do not.   (*Id.*).

Defendants filed a Response to Plaintiffs Motion for Preliminary Injunction (ECF No. 13), on December 9, 2016, arguing that Colorado's statute—which is similar to that of 28 other states and the District of Columbia—is constitutional.   Defendants cite a bevy of case law and historical support for their position.   In addition to contesting Plaintiffs' First and Fourteenth Amendment arguments, Defendants argue Plaintiffs' claims fail due to their lack of standing and laches.   (*Id.*).

The Colorado Republican Committee filed a Motion to Intervene (ECF No. 11), on December 9, 2016, along with a Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 11-1).   President Elect Donald J. Trump and Donald J. Trump for President, Inc., filed a Motion to Intervene (ECF No. 16), on December 12, 2016, the day of the preliminary injunction hearing, which motion was granted.   I now turn to the merits of Plaintiffs' motion.

II.   <u>ANALYSIS</u>

I first note that "[a]s a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."   *Schrier v. Univ. Of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th

2

Cir.1991) (citation omitted)); *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir.1989) ("Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established.").   In order to be entitled to entry of a preliminary injunction pursuant to Fed. R. Civ. P. 65, the moving party must establish that:

> (1) [he or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury ... outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits.

*Schrier*, 427 F.3d at 1258.

Because the limited purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held," we have "identified the following three types of specifically disfavored preliminary injunctions…: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."   *Schrier*, 427 F.3d at 1258-59 (citations omitted).   Such disfavored injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."   *Id.* (citations omitted).

Where the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction.   *Stine v. Lappin*, No. 08-cv-00164-WYD-KLM, 2009 WL 482630, *2 (D. Colo. Feb. 25, 2009) (citation

omitted).

In this case, I find that the injunction that Plaintiffs request seeks to alter the status quo and, because it would otherwise be a mandatory injunction, it is disfavored under Tenth Circuit law.   As such, Plaintiffs' motion must be more closely scrutinized under the standard prescribed above.

This case is extraordinary because the two plaintiffs were selected as Democratic electors and they signed a pledge pursuant to Colorado statute, Colo. Rev. Stat. § 1-4-304, which provides that they would vote consistent with the popular vote of the presidential election, which took place on November 8, 2016.   *See* Colo. Rev. Stat. § 1-4-304(5).   Hillary Clinton and Tim Kaine won the vote in Colorado, and because of that, the electors are bound to vote for the Clinton/Kaine ticket when the electors meet at high noon at the Colorado State Capitol, Monday, December 19, 2016.   *See* Colo. Rev. Stat. § 1-4-304(1).   Plaintiffs ask the Court to enjoin Defendants from enforcing Colorado's binding presidential elector statute, which provides:

> Each presidential elector shall vote for the presidential candidate and, by separate ballot, vice-presidential candidate who received the highest number of votes at the preceding general election in this state.

Colo. Rev. Stat. § 1-4-304(5).

The only consequences to the Plaintiffs' failure to comply with the statute raised by their filings with the Court is that the Secretary of State would replace them as electors and someone else would be chosen.   At oral argument, Plaintiffs raised, for the first time, that the Secretary of State's office would pursue misdemeanor charges or misdemeanor allegations against these plaintiffs, and Plaintiffs' counsel referenced 18 U.S.C. § 594.

Because neither of these two issues was properly raised in Plaintiffs' pleadings, and neither would change the outcome of my ruling, I will decide this matter based on whether or not there is a substantial likelihood of the plaintiffs prevailing on the merits, and whether or not there has been compliance with the other requirements for the issuance of an injunction, given the fact that the type of injunction sought here is disfavored and is an extraordinary remedy.

A. <u>Substantial Likelihood of Prevailing on the Merits</u>

Plaintiffs argue that somehow requiring them to honor their obligations pursuant to the pledge they signed, and as required by state statute, violates Article II of the Constitution, the Twelfth Amendment, the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.   Based on the reasons below, I find that Plaintiffs do not have a substantial likelihood of prevailing on the merits of their claim.[1]

i.   Colorado's Binding Statute

The selection of presidential electors is provided in Art. II, § 1, of the Constitution. States may appoint electors "in such Manner as the Legislature thereof may direct."   U.S. Const. Art. II. § 1, cl. 2.   Presidential electors act by authority of the State, which receives its authority from the federal constitution.   *Ray v. Blair*, 343 U.S. 214, 224 (1952).   The state legislature's power to select the manner for appointing electors is plenary; they may establish the manner in which electors are appointed and take back such power.   *Bush v. Gore*, 531 U.S. 98, 104 (2000).   States have "broad powers to regulate voting, which may include laws relating to the qualification and functions of electors."   *Williams v.*

---

[1] I want to point out that the Supreme Court expressly rejected the application of strict scrutiny to a challenge of state election laws, which is really what this case is, in favor of a more flexible standard.   *See Burdick v. Takushi*, 504 U.S. 428, 432 (1992) (strict scrutiny would unreasonably tie the hands of States seeking to assure that elections are operated equitably and efficiently).

*Rhodes*, 393 U.S. 23, 34 (1968).

Federal law supports the notion that the State's requirement that presidential electors pledge to vote for a particular candidate, in conformity with State law, is constitutional.   *See Blair*, 343 U.S. at 224 ("[n]either the language of Art. II, § 1, nor that of the Twelfth Amendment forbids a party to require from candidates in its primary a pledge of political conformity with the aims of the party.").   *Blair* suggests that the state may also set requirements for presidential electors, and in the event they fail to conform to the state's statutory mandate, the state is permitted to take some remedial action, such as removal of the electors.   *See id.* at 228-231.

Defendants draw support from other state statutory provisions that allow states to remove electors who refuse to comply with state law.   *See*, *e.g.*, Mich. Comp. Laws Ann. § 168.47 (2016) (stating that refusal or failure to vote for the presidential and vice-presidential candidates appearing on the ballot of the political party that nominated the elector constitutes "a resignation from the office of the elector"); N.C. Gen. Stat. § 163-212 (2016) (same); Utah Code Ann. § 20A-13-304(3) (2016) (same).   Defendants also point to 28 other states and the District of Columbia's choice to exercise the power to bind its presidential electors to the candidates who won the State's popular vote.   (ECF No. 13, at 7).   Plaintiffs cite no case or statute striking down that choice as unconstitutional.   Furthermore, Plaintiffs' argument that Colorado's statute makes the Electoral College superfluous is unfounded.   There is a strong presumption favoring the constitutionality of Colorado's elector statute, which they have failed to overcome.   *See Gilmor v. Thomas*, 490 F.3d 791, 798 (10th Cir. 2007).

Decisions from other state courts and federal district courts support Defendants'

6

argument that Colorado's elector statute is constitutional.   The plaintiffs in *Gelineau* brought an analogous action seeking an injunction to prevent the state from taking action against them for failing to vote consistent with their pledges.   *Gelineau v. Johnson*, 904 F. Supp. 2d 742 (W.D. Mich. 2012).   The court held that although the court in *Blair* did not answer whether a pledge was ultimately enforceable, "the opinion's reasoning strongly suggested that it would be."   *Id.* at 748.   The court declined to grant the injunction because the plaintiffs would either lose on the likelihood of success on the merits or on a theory of laches.   *Id.* at 750.

The Supreme Court of New York held that the "services performed by the presidential electors today are *purely ministerial.*"   *Thomas v. Cohen*, 262 N.Y.S. 320, 326 (Sup. Ct. 1933) (emphasis added).   An elector who attempted to disregard their promise to vote for the candidate that won the majority could, in the court's opinion, "be required by mandamus to carry out the mandate of the voters of his state."   *Id.*   The court reasoned that presidential electors do not have a right to "defy the will of the people and to 'vote as they please, even for a candidate whose electors were rejected at the polls.'"   *Id.* at 331.   The electors' choosing is "merely a formality;" they must vote in accordance with the vote of the people.   *Id.*

The Nebraska Supreme Court held that presidential electors' only duty is to vote for the candidates nominated by the party by whose votes they were themselves nominated.   *State ex rel. Neb. Republican State Cent. Comm. v. Wait*, 138 N.W. 159, 163 (Neb. 1912).   If the electors openly declare that they will not perform that duty, then performance of their duty is impossible.   *Id.*   As such, the electors, by their own acts, vacated their places as presidential electors, creating vacancies for the state to fill.   *Id.*

The court ultimately concluded that allowing presidential electors to vote for the candidate of their choice would deprive the citizens of their right to vote, in "violation of both the letter and spirit of our laws."   *Id.* at 165.

ii.  First Amendment

The cases cited above have confirmed the notion that electors perform ministerial duties, which are merely formal in nature.   *See Thomas*, 262 N.Y.S. at 326; *Spreckels v. Graham*, 228 P. 1040, 1045 (Cal. 1924) (electors "are in effect no more than messengers).   As such, presidential electors are not afforded First Amendment protection because their conduct constitutes carrying out the will of the people, who deserve First Amendment protection.   Requiring presidential electors to pledge a vote of his ballot is simply "an exercise of the state's right to appoint electors in such manner… as it may choose."   *Blair*, at 227-28.   Furthermore, their conduct would be illegal under Colorado's elector statute, and conduct made illegal by a state is not unconstitutional simply because the activity purportedly involves elements of speech.   *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949).

I agree with Defendants' contention that the presidential electors waived their First Amendment rights when they accepted the nomination to be presidential electors.   They knew or should have known the obligations that accompanied their acceptance.   Thus, I find that Plaintiffs cannot show a likelihood of success on the merits of their claim.

iii.  Fourteenth Amendment

In determining whether or not a state law violates the Equal Protection Clause, the Court must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the

8

classification.   *Rhodes*, 393 U.S. at 30.

The Court in *Rhodes* held that "the State does have an interest in attempting to see that the election winner be the choice of a majority of its voters."   *Id.* at 32.   "The individual citizen has no federal constitutional right to vote for electors for the President of the United States unless and until the state legislature chooses a statewide election as the means to implement its power to appoint members of the electoral college."   *Bush*, 531 U.S. at 104.

Plaintiffs cannot show a likelihood of success on the merits of their claim because the relief they seek would essentially violate the Equal Protection clause, because granting an injunction allowing the plaintiffs to vote as they please would effectively dilute each citizen's vote.   Plaintiffs, in effect, ask the Court to value their vote over that of the citizens of Colorado**.**   I agree with Defendants' response that allowing the presidential electors to vote as they wish would deprive Coloradoans of their fundamental right to vote for the President and Vice-President.   (*See* ECF No. 13, at 11).   Additionally, *Gelineau* upheld Michigan's winner-take-all method of appointing presidential electors, which is analogous to Colorado.

Based on the record submitted before me, I find that Plaintiffs have not shown that they have a substantial likelihood of prevailing on the merits of their claim that Colorado's presidential elector statute violates the Fourteenth Amendment's Equal Protection Clause.

B.  <u>Irreparable Harm</u>

To establish irreparable injury "the plaintiff[] must show that [he] will suffer irreparable injury and that the irreparable injury is of such imminence that there is a clear

9

and present need for equitable relief to prevent the harm." *Stender v. ERP Operating Ltd. Partnership*, No. 13-cv-00496-REB-MEH, 2013 WL 788186, *3 (D. Colo. March 1, 2013 (citing *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir.2003)). "Generally, an injury is considered to be irreparable when it is incapable of being fully compensated for in damages or where the measure of damages is so speculative that it would be difficult if not impossible to correctly arrive at the amount of the damages." *Id.* Thus, irreparable injury is established "when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video*, 269 F.3d at 1156. "'To constitute irreparable harm, an injury must be certain, great, actual and not theoretical.'" *Stender*, 2013 WL 788186, at *3 (quoting *Heideman,* 348 F.3d at 1189).

Plaintiffs contend they would suffer irreparable harm if a preliminary injunction is not granted because they, in effect, will be removed as electors.   I do not find that Plaintiffs will suffer irreparable injury within the context of the law.   What I do find, however, is that the citizens of Colorado would be irreparably harmed if an injunction is granted because they expect electors to vote for the candidate who won the majority of the state's votes.

I find that granting an injunction would irreparably harm the status quo and the public's general expectations.   The public has some expectation, and it is a permissible expectation, that presidential electors are bound by the promises they voluntarily made when they accepted their nominations.   Thus, Plaintiffs fail to meet their requirement to show that they will suffer irreparable harm.

C. <u>Balance of Hardships</u>

Plaintiffs assert no hardship will occur to Defendants or the State if the injunction is granted.   Plaintiffs further contend that great hardship will occur to them if they are barred from fulfilling their role as electors and voting for the most fit and qualified candidates.   Defendants argue that the hardships tip in favor of the State because Plaintiffs' eleventh-hour claim is barred by laches[2] and nullifying the results of Colorado's general election disserves the public interest.

I believe there is some merit to Defendants' laches argument, but I do not find it, in and of itself, bars the claim.   Instead, I agree with Defense counsel's argument that laches tips the scales in favor of Defendants on the balance of hardships.   Defendants argue that the last-minute nature of this action, coupled with the potentially stifling effects it may have on the presidential election in our country, supports a finding of significant prejudice that Defendants would suffer if Plaintiffs were to prevail.   Thus, Plaintiffs have also failed to meet their burden on this prong.

D. <u>Public Interest</u>

I briefly mentioned the public interest above, and I consider this element with as much solemnity and importance as my words can express.   Our country was founded a long time ago, and when it was founded, the electoral system was incorporated in Article II of the U.S. Constitution.   Then, in the 19th Century, the Twelfth Amendment was enacted as part of the Constitution, which clarified the role of electors as it relates to the selection of the President and Vice President.   The Colorado statute at issue, Colo. Rev.

---

[2] Laches consists of two elements: (1) inexcusable delay in instituting suit; and (2) resulting in prejudice to defendant from such delay. *Brunswick Corp. v. Spirit Reel Co.*, 832 F.2d 513, 523 (10th Cir. 1987) (citations omitted).

Stat. § 1-4-304, has been in existence since 1959.   The statute compels presidential electors, who voluntarily assume the responsibility, to do what the statute requires.   For reasons that do not make a lot of sense to me, Plaintiffs do not want to do what they pledged to do.   I find that their obligations are legally enforceable.   The public interest tilts substantially in favor of the public expecting and requiring the electors to do what they agreed to do.

My ruling goes to the whole premise of the public having an interest in fair and effective elections, political stability, legitimacy of the eventual winner, and the expectations of the American people.   The public would be adversely affected if I granted this injunction and allowed Plaintiffs, the presidential electors, to vote as they please, contrary to the agreement they made when they accepted their nominations.   In the context of the public interest, if I granted this injunction, it would undermine the electoral process and unduly prejudice the American people by prohibiting a successful transition of power.   If Plaintiffs have concerns with Colorado's statute and the electoral process, they need to address those with the Colorado General Assembly.

III.   <u>CONCLUSION</u>

In conclusion, for the reasons set forth herein, Plaintiffs have failed to meet the requirements to grant a temporary restraining order and preliminary injunction in this matter.   Accordingly, it is

ORDERED that the Motion by Plaintiffs for Temporary Restraining Order and Preliminary Injunction (ECF No. 2) is **DENIED.**

Dated:   December 21, 2016

BY THE COURT:


s/ Wiley Y. Daniel_____
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE