IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-2986-WYD-NYW

POLLY BACA and ROBERT NEMANICH,
    Plaintiffs,
v.

JOHN W. HICKENLOOPER, JR., in his official capacity as Governor of the State of Colorado, WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State, CYNTHIA H. COFFMAN, in her official capacity as Colorado Attorney General,
    Defendants, and

COLORADO REPUBLICAN COMMITTEE, DONALD J. TRUMP, and DONALD J. TRUMP FOR PRESIDENT, INC.,
    Intervenors.

## DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

Defendants, John W. Hickenlooper, Jr., in his official capacity as Governor of the State of Colorado, Wayne W. Williams, in his official capacity as Colorado Secretary of State, and Cynthia H. Coffman, in her official capacity as Colorado Attorney General, move to dismiss under FED. R. CIV. P. 12(b)(1) and 12(b)(6).

### FACTS AND PROCEDURAL BACKGROUND

This Court is familiar with the allegations in Plaintiffs' Complaint, having already held a hearing on, and denied, Plaintiffs' motion for a temporary restraining order and preliminary injunction. Doc. 27. This Court found that Plaintiffs were not likely to succeed on the merits of their claims and that Colorado's statute binding presidential electors to the Presidential and Vice-Presidential candidates who won the State's popular vote was "legally enforceable." Doc. 27, p. 12 (referring to Colo. Rev. Stat. § 1-4-304(5)). The Court reasoned that granting Plaintiffs a preliminary injunction to permit them to vote their individual preferences in the Electoral College "would undermine the electoral process and unduly prejudice the American people by

prohibiting a successful transition of power." *Id.* On December 16, 2016, the Tenth Circuit declined to disturb this Court's decision. Doc. 26. In the run-up to the Electoral College vote, several other courts also declined to enjoin similar state laws governing electors. *See Chiafalo v. Inslee*, No. 16-36034, 2016 U.S. App. LEXIS 23392 (9th Cir. Dec. 16, 2016); *Chiafalo v. Inslee*, No. C16-1886JLR, 2016 U.S. Dist. LEXIS 174423 (W.D. Wash. Dec. 15, 2016); *Koller v. Brown*, No. 16-cv-07069-EJD, 2016 U.S. Dist. LEXIS 174409 (N.D. Cal. Dec. 16, 2016).

After the denial of Plaintiffs' requested injunction, Plaintiffs cast their Electoral College ballots on December 19, 2016, for the Presidential and Vice-Presidential candidates who received the most votes in Colorado, Hillary Clinton and Tim Kaine. Doc. 28, p. 10. Congress counted the Electoral College ballots on January 6, 2017, and announced Donald Trump and Michael Pence as the persons elected President and Vice President. 163 CONG. REC. H189–H190 (daily ed. Jan. 6, 2017). They took office on January 20, 2017.

**STANDARD OF REVIEW**

**12(b)(1)**. Standing and mootness are jurisdictional defenses, and a motion to dismiss based on either is properly brought under Rule 12(b)(1). *See Goodman v. United States*, 185 Fed. App'x 725, 727 (10th Cir. 2006); *Citizens for Responsible Gov't State PAC v. Davidson*, 236 F.3d 1174, 1188–89 (10th Cir. 2000). A motion to dismiss under Rule 12(b)(1) admits all well-pleaded facts in the complaint as distinguished from conclusory allegations. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The moving party may either facially attack the Complaint's allegations as to the existence of subject matter jurisdiction or go beyond the allegations by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). The burden of

establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

**12(b)(6)**. A claim must be dismissed under Rule 12(b)(6) if it asserts a legal theory not cognizable as a matter of law or if the complaint fails to allege sufficient facts to support a cognizable legal claim. *Bd. of Cnty. Comm'rs of La Plata v. Brown Retail Group, Inc.*, 598 F. Supp. 2d 1185, 1191 (D. Colo. 2009). Under the former, a complaint fails if it appears beyond doubt that the plaintiff can plead no set of facts in support of his claim which would entitle him to relief. *Id.* Under the latter, a complaint must be dismissed if the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

Plaintiffs' Complaint should be dismissed under Rule 12(b)(1) because two fatal defects deprive this Court of subject matter jurisdiction—this election dispute is moot, and Plaintiffs lack standing to challenge Colorado law. But even putting aside these jurisdictional defects, dismissal is alternatively required because Plaintiffs' Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6). The U.S. Constitution, backed by longstanding interpretations from the U.S. Supreme Court, permits states to bind presidential electors to the Presidential and Vice-Presidential candidates who won the State's popular vote. Nothing in the First Amendment, the Twelfth Amendment, or the Fourteenth Amendment's Equal Protection Clause abrogates this state power.

## I. This Court does not have subject matter jurisdiction over Plaintiffs' claims.

This Court lacks subject matter jurisdiction over this case under Rule 12(b)(1) for two reasons: (1) Plaintiffs' claims are moot; and (2) Plaintiffs lack standing to challenge the constitutionality of Colorado law.

### A. Plaintiffs' claims are moot because the Electoral College ballots have been cast and counted.

The constitutional mootness question is a threshold inquiry because a live case or controversy is a constitutional prerequisite to federal jurisdiction. *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997). To survive the constitutional mootness test, a suit must "present a real and substantial controversy with respect to which specific relief may be fashioned" and "the controversy must remain alive at the trial and appellate stages of the litigation." *Id.* (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990)). The "crucial" question is whether granting a present determination of the issues offered "will have some effect in the real world." *Front Range Equine Rescue v. Vilsack*, 782 F.3d 565, 568 (10th Cir. 2015) (internal quotations omitted). "Generally, a claim for prospective injunction becomes moot once the event to be enjoined has come and gone." *Citizen Center v. Gessler*, 770 F.3d 900, 907 (10th Cir 2014).

In this case, Plaintiffs' claims fail to survive the constitutional mootness inquiry. The gravamen of Plaintiffs' Complaint is that they believe Donald Trump is "unfit" to be President of the United States. Doc. 1, p. 3. They contend that the only way to prevent him from "ascending to the highest office[ ]" in the country is for Electoral College members to cast their ballots for a "consensus candidate, other than Clinton or Trump, upon whom electors from both parties … can agree[.]" *Id.* at 4. To accomplish this, Plaintiffs request that the Court permanently enjoin

Defendants from removing or replacing them as electors in the event they vote for someone other than Hillary Clinton or Tim Kaine in the Electoral College. *Id.* at 7.

In other words, Plaintiffs' Complaint focuses entirely on past events that this Court is unable to affect "in the real world." *Vilsack*, 782 F.3d at 568. The Electoral College members convened and cast their ballots on December 19, 2016. Doc. 28, p. 9. Plaintiffs followed Colorado law by casting their ballots for the Presidential and Vice-Presidential candidates who received the most votes in Colorado—Hillary Clinton and Tim Kaine. *Id.* at 9–10. Congress counted the Electoral College ballots on January 6, 2017, and announced Donald Trump as the person elected President. 163 CONG. REC. H189–H190 (daily ed. Jan. 6, 2017). In short, no live case or controversy remains. The event that Plaintiffs seek to enjoin "has come and gone."[1] *Citizen Center*, 770 F.3d at 907. Plaintiffs' claims should be dismissed as moot.

### B. Plaintiffs lack standing to challenge Colorado law.

For three reasons, Plaintiffs also lack standing—that necessary "personal injury fairly traceable to the defendant's allegedly unlawful conduct [that is] likely to be redressed by the requested relief." *DaimerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

*First*, while each of Plaintiffs' alleged injuries arises in their capacities as presidential electors, they no longer hold that office. Their duties concluded on December 19, 2016, after they cast their Electoral College ballots. Plaintiffs' standing thus evaporated when they

---

[1] Because Plaintiffs filed their challenge at the eleventh hour, this Court concluded that laches, while not dispositive, "tips the scales" in favor of denying Plaintiffs' request for a preliminary injunction. Doc. 27, p. 11. For the same reasons, Plaintiffs dilatory action in bringing this suit "tips the scales" in favor of dismissing the Complaint. *See* Doc. 13, pp. 16–18. Plaintiffs should have known that, for more than half a century, Colorado law has required the State's presidential electors to vote for the Presidential and Vice-Presidential candidates who won the popular vote in Colorado. *See id.*; *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1476 (10th Cir. 1990) (finding claim barred by laches and stating, "plaintiffs should have known of the zoning ordinance for approximately seventeen years"). Thus, while not dispositive, laches militates in favor of dismissing the Complaint.

completed their official duties. *See Karcher v. May*, 484 U.S. 72, 81 (1987) (holding former legislators "lack authority to pursue" appeal because "they no longer hold those offices"); *Tarsney v. O'Keefe*, 225 F.3d 929, 939 (8th Cir. 2000) ("Even if these appellants might have had legislator standing at some point, such standing would have terminated when they left office.").

*Second*, even if Plaintiffs still held their positions, as state officers they would lack Article III standing to challenge the constitutionality of state statutes when they are not personally affected by those statutes and their interest in the litigation is official rather than personal. *See, e.g.*, *Columbus & Greenville Railway v. Miller*, 283 U.S. 96, 99–100 (1931); *Donelon v. La. Div. of Admin. Law ex rel. Wise*, 522 F.3d 564, 566–67 (5th Cir. 2008); *Cooke v. Hickenlooper*, No. 13-cv-01300-MSK-MJW, 2013 WL 6384218 (D. Colo. Nov. 27, 2013).

Presidential electors are without doubt state officers. *See Walker v. United States*, 93 F.2d 383 (8th Cir. 1937); *Chenault v. Carter*, 332 S.W.2d 623 (Ky. 1960). Nor is there any question that Plaintiffs' stake in this case is official rather than personal. In *Smith v. Indiana*, 191 U.S. 138 (1903), a county auditor argued that an Indiana property tax statute violated the Fourteenth Amendment. The U.S. Supreme Court held that "the auditor had no personal interest in the litigation. He had certain duties as a public officer to perform. The performance of those duties was of no personal benefit to him. Their non-performance was equally so." 191 U.S. at 148. So too here. While Plaintiffs declare their belief that it is their constitutional responsibility "to vote in the best interests of the state and nation," Doc. 1-1 at 3, "a public official's personal dilemma in performing official duties that he perceives to be unconstitutional does not generate standing." *Thomas v. Mundell*, 572 F.3d 756, 761 (9th Cir. 2009).[2]

---

[2] While the Tenth Circuit declined to rule that Plaintiffs lacked standing based on this theory, Doc. 26, p. 7, it appeared to leave the question open, recognizing that the "stage of the proceedings" was early and that the record before it was "preliminary." *Id.* Moreover, the Tenth

*Third*, Plaintiffs' alleged injury is not redressable. *See DaimerChrysler*, 547 U.S. at 344. Here, redress would have required a significant number of presidential electors from other states to coalesce around a compromise candidate who received no votes in the November 2016 election. That obviously did not happen, but in any event Plaintiffs' hope that it would was entirely speculative, and thus insufficient to satisfy the requirements of Article III. *See id.* (holding plaintiffs lacked standing because their claim "depend[ed] on how legislators [would] respond" to a court order).

## II. Plaintiffs' Complaint suggesting Colorado may not bind its presidential electors fails to state a claim upon which relief can be granted.

Plaintiffs' Complaint contends that § 1-4-304(5) violates Article II of the U.S. Constitution, the Twelfth Amendment, the First Amendment, and the Fourteenth Amendment's Equal Protection Clause. Doc. 1, p. 5. Because these theories are not cognizable as a matter of law, Rule 12(b)(6) requires dismissal.

### A. The text of the U.S. Constitution permits binding of presidential electors.

The U.S. Constitution reserves to the States the right to decide for themselves how their presidential electors are selected and, if necessary, removed. Article II provides that "[e]ach state shall appoint, *in such manner as the Legislature thereof may direct*, a number of electors, equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress." U.S. Const. art II, § 1 (emphasis added). Nothing in the Twelfth Amendment, or any

---

Circuit's reasoning for finding even preliminary standing is questionable. The court rejected Defendants' reliance on *Columbus* because the taxpayer "directly affected" by the state law in that case "conceded the validity of the law." *Id.* But as other cases show, whether a state officer possesses standing does not turn on whether the person "directly affected" concedes the law's validity. *See Thomas*, 572 F.3d at 760–64 (holding that both a county attorney, and regular citizens subject to the challenged law, lacked standing).

other amendment, abrogates this state power. *See Bush v. Gore*, 531 U.S. 98, 104 (2000) (confirming the States' power under Article II, § 1 is "plenary"). Thus, because the States alone have the power to appoint their presidential electors, they necessarily possess the power to attach conditions to that appointment. Binding them to the outcome of the State's popular vote is one such permissible condition.[3] *See* Beverly J. Ross & William Josephson, *The Electoral College and the Popular Vote*, 12 J. L. & POLITICS 665, 678 (1996) ("The states' constitutional power to appoint electors would appear to include the power to bind them"). And indeed it is the most popular condition, with 29 states and the District of Columbia opting to do so.[4] In the same vein, no constitutional provision bars a state from removing electors who refuse to comply with state law. *See, e.g.*, MICH. COMP. LAWS ANN. § 168.47 (2016) (stating that refusal or failure to vote for the Presidential and Vice-Presidential candidates appearing on the ballot of the political party that nominated the elector constitutes "a resignation from the office of the elector").

At best, Plaintiffs' position boils down to an argument that electors cannot be bound because the U.S. Constitution is silent on the question. But if the Constitution is silent, the power to bind or remove electors is properly reserved to the States under the Tenth Amendment. U.S. Const. amend. X; *see McPherson v. Blacker*, 146 U.S. 1, 35–36 (1892) (stating "exclusive" State power over "mode of appointment" of electors "cannot be overthrown because the States have latterly exercised in a particular way a power which they might have exercised in some other way"); *cf.* Matthew J. Festa, *The Origins and Constitutionality of State Unit Voting in the*

---

[3] Even Congress agrees that electors may be bound. It enacted legislation pursuant to the Twenty-third Amendment that binds the District of Columbia's presidential electors to the candidates who won the District's popular vote. *See* D.C. CODE ANN. § 1-1001.08(g)(2) (2016) (originally enacted in 1961, Pub L. No. 87-389, 75 Stat. 818).

[4] National Conference of State Legislatures, *The Electoral College* (Aug. 22, 2016), *available at*: http://www.ncsl.org/research/elections-and-campaigns/the-electoral-college.aspx (last visited Jan. 11, 2017).

*Electoral College*, 54 VAND. L. REV. 2099, 2145 (2001) ("[A]ny legislation that impinges on the states' discretion to use the [winner-take-all allocation of electoral votes] would seem to run into this very same Tenth Amendment problem"). Colorado has chosen to exercise that power and bind its presidential electors to the candidates who won the State's popular vote. § 1-4-304(5). Plaintiffs cite no case, and Defendants are aware of none, striking down that choice as unconstitutional.

### B. The U.S. Supreme Court and multiple lower courts permit binding of electors.

The U.S. Supreme Court has upheld measures that bind presidential electors in circumstances that, while not identical, are similar to this case. *See Ray v. Blair*, 343 U.S. 214 (1952). In *Ray*, the Alabama legislature delegated to the political parties the authority to nominate electors. *Id.* at 217 n.2. Alabama's Democratic Party required its nominees for electors to pledge "aid and support" to the nominees of the National Convention of the Democratic Party for President and Vice President. *Id.* at 215. The Court upheld this pledge requirement, finding "no federal constitutional objection" when a state authorizes a party to choose its nominees for elector and to "fix the qualifications for the candidates." *Id.* at 231. Thus, the Court refused to recognize a constitutional right for presidential electors to vote their individual preferences.

Plaintiffs assert that *Ray* "left open" the question of enforcement of statutes that bind presidential electors. Doc. 1, p. 6. But enforceability by the State is not the issue here. Plaintiffs have brought this federal action to affirmatively *invalidate* § 1-4-304(5), a statute that has been on the books since 1959. *See* 1959 COLO. SESS. LAWS, p. 415. That they cannot do. Under *Ray*, if a state has the power to delegate its power to bind electors, it necessarily must have the authority to bind them itself. *See* Ross & Josephson, 12 J. L. & POLITICS at 696 ("[T]he Court's language and reasoning in *Ray v. Blair* strongly imply that state laws directly binding electors to a specific

9

candidate are constitutional"). As such, Plaintiffs have not overcome the strong presumption favoring the constitutionality of Colorado's elector statute. *See Gilmor v. Thomas*, 490 F.3d 791, 798 (10th Cir. 2007). This Court concluded as much when it denied Plaintiffs' request for a preliminary injunction. Doc. 27, p. 6.

Even if the enforcement of § 1-4-304(5) were at issue, Plaintiffs' arguments would still fail as a matter of law. Multiple lower courts have found state elector statutes like Colorado's to be enforceable. *See Gelineau v. Johnson*, 904 F. Supp. 2d 742, 748 (W.D. Mich. 2012) ("Though the [*Ray*] Court was not in a position to decide whether the pledge was ultimately enforceable, the opinion's reasoning strongly suggested that it would be"); *Thomas v. Cohen*, 262 N.Y.S. 320, 326 (Sup. Ct. 1933) ("The elector who attempted to disregard that duty could, in my opinion, be required by mandamus to carry out the mandate of the voters of his State"); *State ex rel. Neb. Republican State Cent. Comm. v. Wait*, 138 N.W. 159, 163 (Neb. 1912) (affirming writ of mandamus requiring the Secretary of State to print on the Republican line of the ballot the names of six replacement electors when the original Republican electors "openly declare[d]" they would vote in the Electoral College for another party's candidates). Each of these cases underscores the "bounden duty" imposed on electors to vote in the Electoral College for the candidates who won the State's popular vote. *Thomas*, 262 N.Y.S. at 326. So "sacred and compelling" is that duty—and so "unexpected and destructive of order in our land" would be its violation—that courts have recognized its performance amounts to a "purely ministerial" duty that may be compelled through a writ of mandamus. *Id.*

Accordingly, because the courts have uniformly recognized the constitutionality and enforceability of binding electors through statute, Plaintiffs fail to state a claim upon which relief can be granted.

### C. Binding electors does not violate the First Amendment.

Next, Plaintiffs' Complaint asserts that § 1-4-304(5) violates their right to engage in political speech under the First Amendment. Doc. 1, p. 5. Plaintiffs' Complaint fails to state a viable legal claim for three reasons.

*First*, Plaintiffs' First Amendment argument should be rejected because they enjoy no First Amendment protection to speak in their capacities as presidential electors. *See Garcetti v. Ceballos*, 126 S. Ct. 1951, 1960 (2006) ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any [First Amendment] liberties the employee might have enjoyed as a private citizen"). And in any event, Plaintiffs identify no authority suggesting that casting a ballot in the Electoral College is a First Amendment right deserving of this Court's protection. S*ee Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984) ("[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies"). The U.S. Supreme Court has made clear that it "cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). As this Court found when it denied the preliminary injunction motion, conduct made illegal by a state is not unconstitutional simply because the activity purportedly involves elements of speech. Doc. 27, p. 8 (citing *Giboney v. Empire Storage*, 336 U.S. 490, 502 (1949)). Rather, the Court inquires whether an intent to convey a particularized message was present and whether the likelihood was great that the message would be understood by those who viewed it. *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Only "inherently expressive" conduct is extended First Amendment protection. *Rumsfeld v. Forum for Academic & Instit. Rights, Inc*., 547 U.S. 47, 66 (2006).

Casting a vote in the Electoral College is not "inherently expressive," but is instead "purely ministerial." *Thomas*, 262 N.Y.S. at 326; *see Spreckels v. Graham*, 228 P. 1040, 1045 (Cal. 1924) (electors "are in effect no more than messengers"). Nor is the likelihood "great" that a faithless elector's rejection of the outcome of the popular vote will be understood by those who watch it. Even assuming Plaintiffs' faithless elector votes are publicly viewable, "[v]ery few know exactly when and where the meeting [of the Electoral College] takes place, and a great many have no knowledge of the gathering at all." *Thomas*, 262 N.Y.S. at 326. Casting a ballot in the Electoral College is therefore not inherently expressive conduct protected by the First Amendment.

*Second,* as the Court has already concluded, Plaintiffs waived their First Amendment rights (if any) when they accepted the nomination to be presidential electors. Doc. 27, p. 8. Contrary to Plaintiffs' arguments, First Amendment rights may be waived by the agreement of a party. *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991); *Snepp v. United States*, 444 U.S. 507, 513 (1980). For example, in *Cowles Media*, a plaintiff provided a defendant journalist with documents for a news story under a promise of confidentiality. 501 U.S. at 665 (1991). The plaintiff was fired from his job after the defendant breached this promise by publishing the plaintiff's name. *Id.* The U.S. Supreme Court concluded that the plaintiff's promissory estoppel claim was valid, reasoning that the First Amendment is not a constitutional license for entities to disregard promises that would otherwise be enforceable under state law. *Id.* at 672. *Cowles Media* thus demonstrates that the concept of waiver extends to situations involving promissory estoppel.

Here, Plaintiffs admit that they were nominated by the Colorado Democratic Party and that they executed a pledge to support the Democratic nominees for President and Vice

12

President. Doc. 1, p. 3. Plaintiffs understood that when voters selected candidates on the ballot, they were, in fact, selecting a slate of electors pledged to support those candidates. Doc. 1-1, ¶ 7. Plaintiffs' voluntary pledges, alongside their known obligations under § 1-4-304, were a promise to Colorado voters that they would support the Democratic ticket if it prevailed. When a majority of Coloradans supported that ticket on November 8, 2016, those voters reasonably and detrimentally relied on this promise. *See* Charles L. Black Jr., *Forum Juridicum: The Faithless Elector – A Contracts Problem*, 38 LA. L. REV. 31, 32–33 (1977); *see also Spreckels*, 228 P. at 1044–45 (noting that an elector may have a public duty under an agency theory as well). Thus, in denying their motion for a preliminary injunction, this Court properly estopped Plaintiffs from breaching their promise to the Colorado people. *See Pierce v. St. Vrain Valley Sch. Dist. RE-1J*, 981 P.2d 600, 604 (Colo. 1999) ("Enforcement of the settlement agreement does not violate the First Amendment, but merely applies the law of contract in Colorado, which simply requires those making promises to keep them." (internal quotations omitted)). This Court should again confirm that Plaintiffs waived their First Amendment rights and dismiss their claim.

*Third*, Plaintiffs' First Amendment argument seeks to deny Coloradans their fundamental right to vote for their chosen Presidential and Vice-Presidential candidates. *See Hadley v. Junior College Dist. of Metro. Kansas City*, 397 U.S. 50, 56 (1970) ("[T]he Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election"); *Williams v. Rhodes*, 393 U.S. 23, 38 (1968) (stating the right to vote is a "fundamental political right"). This Court should reject Plaintiffs' attempt to do so. First Amendment freedoms do "not extend to joining with others for the purpose of depriving third parties of their lawful rights." *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 776

(1994); *see also Schenck v. United States*, 249 U.S. 47, 52 (1919) ("The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic").

Accordingly, Plaintiffs' purported right to cast a faithless elector ballot cannot defeat Coloradans' fundamental right to participate in the general election. Plaintiffs' claim must be rejected for failure to state a claim upon which relief can be granted.

### D. Plaintiffs' Equal Protection claim fails as a matter of law.

Plaintiffs' Complaint asserts that Colorado's "winner-take-all system" in the Electoral College "violates the Equal Protection Clause because it dilutes Colorado's electors' votes." Doc. 1, p. 6. Plaintiffs also contend that Colorado's Electoral College votes are worth proportionally less than those in smaller states, like Wyoming. Doc. 2, p. 8. But these arguments are both red herrings—neither casts doubt on states' ability to bind their presidential electors. As such, this Court previously rejected Plaintiffs' theory, stating it "would essentially violate the Equal Protection clause, because granting an injunction allowing the plaintiffs to vote as they please would effectively dilute each citizen's vote." Doc. 27, p. 9. This Court was correct. It should confirm that Plaintiffs' Equal Protection claim fails as a matter of law, for two reasons.

*First*, the number of presidential electors in each state is prescribed in the federal Constitution. U.S. Const. art. II, § 1 (number of electors "equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress"). No court order can alter this constitutional mandate, let alone add additional Colorado electors. Plaintiffs' elector-dilution argument is therefore not redressable by this Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (standing requires that "it must be likely, as opposed to merely speculative, that the [plaintiff's] injury will be redressed by a favorable decision." (internal quotation omitted)).

*Second*, Plaintiffs' objection to Colorado's "winner-take-all" system—sometimes called the "unit voting rule"—has already been rejected by the U.S. Supreme Court. *See Gray v. Sanders*, 372 U.S. 368 (1963). In *Gray*, the Court addressed a challenge to Georgia's "county unit system" that, like Colorado's approach to the Electoral College, aggregated votes by county and then awarded all of the county's predetermined unit votes to the winner in each county. 372 U.S. at 370–71. Although the Court struck down Georgia's system, it was careful to distinguish the Electoral College as "inapposite." *Id.* at 378–80. The Electoral College was different, the Court explained, because of its explicit inclusion in the Constitution; its inclusion was the result of "specific historical concerns," which "validated the collegiate principle despite its inherent numerical inequality[.]" *Id.* at 378. Thus, the Constitution "sanctioned" the "weighting of votes" for President and Vice President in the Electoral College, but not Georgia's county unit rule system. *Id.* at 380. In the wake of *Gray*, lower courts have repeatedly rejected challenges to the Electoral College's unit voting system. *See Williams v. Va. State Bd. of Elections*, 288 F. Supp. 622, 627–29 (E.D. Va. 1968); *Penton v. Humphrey*, 264 F. Supp. 250, 251–52 (S.D. Miss. 1967); *Lowe v. Treen*, 393 So.2d 459, 460–61 (La. Ct. App. 1st Cir. 1980). And the U.S. Supreme Court has refused to hear a direct, original action challenging its constitutionality. *See Delaware v. New York*, 385 U.S. 895 (1966) (per curiam). As such, Plaintiffs' argument should be rejected.

### E.   The Electoral College is not superfluous if Colorado law is followed.

Plaintiffs contend that enforcing § 1-4-304(5) will render the Electoral College "superfluous." Doc. 1, p. 6. Defendants' response to the preliminary injunction motion refuted this argument in detail. Doc. 13. For those reasons, Plaintiffs' argument fails as a matter of law.

### CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice.

Respectfully submitted this 31st day of January, 2017.

        CYNTHIA H. COFFMAN
        Attorney General

        *s/ Grant T. Sullivan*
        LEEANN MORRILL, 38742*
        First Assistant Attorney General
        MATTHEW D. GROVE, 34269*
        Assistant Solicitor General
        GRANT T. SULLIVAN, 40151*
        Assistant Solicitor General

        Public Officials Unit / State Services Section
        Attorneys for Defendants
        Ralph L. Carr Colorado Judicial Center
        1300 Broadway, 6th Floor
        Denver, Colorado 80203
        Telephone: 720 508-6349
        FAX: 720 508-6041
        E-Mail: leeann.morrill@coag.gov
            matt.grove@coag.gov
            grant.sullivan@coag.gov
        *Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2017, I served a true and complete copy of the foregoing **DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** upon all parties through ECF:

Jason Wesoky
1331 17th Street, Ste. 800
Denver, CO 80202
*Attorney for Plaintiffs*

Christopher O. Murray
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202-4432
*Attorney for Intervenors*

                                    *s/ Terri Connell*