## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-2986-WYD-NYW

POLLY BACA and ROBERT NEMANICH,

Plaintiffs

v.

JOHN W. HICKENLOOPER JR., in his official capacity as Governor of Colorado, CYNTHIA
H. COFFMAN, in her official capacity as Attorney General of Colorado, and WAYNE W.
WILLIAMS, in his official capacity as Colorado Secretary of State.

Defendants, and

COLORADO REPUBLICAN COMMITTEE, DONALD J. TRUMP, and DONALD J. TRUMP
FOR PRESIDENT, INC.,

Intervenors.

---

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER
## FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

---

Plaintiffs, through undersigned counsel, hereby respectfully submit their Response to

Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) as follows:

### <ins>INTRODUCTION</ins>

Defendants seek to permanently prevent this Court or any other from reviewing the

constitutionality of C.R.S. § 1-4-304 (and similar statutes) by dismissing the claims because they

were not resolved before December 19, 2016, and are now, in Defendants' view, "moot." The

claims are not moot because they are capable of repetition but evade review.

Also, the controversy remains alive because the constitutionality of C.R.S. § 1-4-304 has

not been decided. The actual "gravamen" of the Complaint is that the statute violates Article II

§1 of the Constitution and the Twelfth Amendment as embodied in Plaintiffs' declaratory

judgment claim. Unless and until a court rules on the constitutionality of the statute, the relief requested – finding the statute unconstitutional and prohibiting it from being enforced at any time – can be granted.

Defendants' Motion should be denied because the Plaintiffs have standing to challenge the constitutionality of the law because, as members of the Electoral College, they are obligated to carry out a federal duty explicitly set forth in the United States Constitution, and, pursuant to the Supremacy Clause, states cannot interfere with federal duties. The state interfered with Plaintiffs' duty. Thus, only Electors like Plaintiffs could have standing to challenge the constitutionality of the statute.

## FACTS AND BACKGROUND

After Plaintiffs, pursuant to D.C.COLO.LCivR 65.1, provided a copy of the Complaint to Defendants, Defendant Williams, through his spokesperson Lynn Bartels, stated that Defendant Williams "promised to 'remove' any elector who fail[ed]" to vote for Hillary Clinton and Tim Kaine and that the Elector "may face a misdemeanor under Colorado Law." *See* https://www.denverite.com/colorado-presidential-electors-suing-state-open-door-anti-trump-movement-24424/. In addition, Defendant Williams stated Plaintiffs were: engaged in an "illegal conspiracy;" making "an arrogant attempt" to undermine the "will of the people of Colorado;" "sell[ing] their vote to electors in other states;" and were "evil." *Id.*

On December 12, 2016, Plaintiffs and myriad other Electors from across the nation signed an open letter to James Clapper, Director of National Intelligence, asking for a briefing on matters related to Russian interference with the election and Trump's ties to Russia. *See* https://extranewsfeed.com/bipartisan-electors-ask-james-clapper-release-facts-on-outside-interference-in-u-s-election-c1a3d11d5b7b#.4oypgz3dv. That request was denied.

After this Court denied Plaintiffs' request for an injunction and temporary restraining order, the Tenth Circuit concluded that under the Twelfth Amendment, it was "unlikely" that Defendants would seek to, or be able to, remove a member of the Electoral College after voting began. *Baca v. Hickenlooper*, No. 16-1482, 2016 U.S. App. LEXIS 23391, at *15 n.4 (10th Cir. Dec. 16, 2016).

Just hours before the vote took place, Defendants changed the oath of the Electors to include a statement that they pledged to vote for the winner of the popular vote in Colorado. *See* http://kdvr.com/2016/12/19/colorado-electoral-college-casts-all-9-votes-for-clinton-kaine-after-elector-replaced/. Plaintiffs objected to the oath and informed Defendant Williams they were agreeing to the oath under duress. *Id.* Plaintiffs were scared, intimidated, and coerced by Defendant Williams' public threats to bring criminal charges against anyone who didn't vote his way, and his extraordinary efforts to change the oath at the last possible minute made things worse. Elector Micheal Baca voted his conscience as outlined in Federalist No. 68 and cast his ballot for Governor Kasich. *Id.* Defendant Williams rejected the vote, removed him as an Elector in contravention of the Twelfth Amendment and the Tenth Circuit's opinion, and swore in a new Elector. *Id.*

To date, three of Trump's advisers/officials have resigned due to their ties with Russia, including Trump's now former National Security Adviser Gen. Micheal Flynn, and multiple investigations are ongoing. http://www.businessinsider.com/Micheal-flynn-resigns-russia-paul-manafort-carter-page-2017-2

## ARGUMENT

Legal doctrines more than a century old demonstrate Defendants' motion should be denied. First, the text of the Twelfth Amendment renders C.R.S. § 1-4-304 and Defendants actions to enforce it unconstitutional. Second, states cannot "retard, impede, burden, or in any

manner control the operations of the constitutional laws enacted by Congress to carry into effect the powers vested in the national Government." *McCullouch v. Maryland*, 17 U.S. 316, 436 (1819). The text of the Twelfth Amendment gives the Federal Government exclusive power to count electoral votes. Plaintiffs, as Electors, were carrying out federal duties set forth in Article II § 1, the Twelfth Amendment, and 3 U.S.C. §§ 8, 15. Defendants, by operation of C.R.S. § 1-4-304 interfered with the powers of Congress to count electoral votes.

Third, Plaintiffs' claims are capable of repetition but evade review. *See Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498 (1911). Plaintiff Baca has been an Elector more than once before, and Plaintiffs likely will be Electors again. These claims did not ripen until November 9, 2016 and could not be adjudicated before the Electoral College voted on December 19, 2016.[1]

## I.   Plaintiffs Have Stated Claims Upon Which Relief Can Be Granted.

### A.   The Text of the Twelfth Amendment Bars Defendants' Actions and Renders C.R.S. § 1-4-304 Unconstitutional.

The Plaintiffs claims are cognizable because C.R.S. § 1-4-304 is unconstitutional. The Twelfth Amendment states that "**The Electors** shall meet … and vote by ballot for President and Vice President …; **they** shall name in their ballots the person voted for as President … [and] Vice-President …; and **they** shall make distinct lists of all persons voted for … which lists **they** shall sign and certify…." U.S. Const. Amend XII (emphasis added).

Under the plain text of the Twelfth Amendment, only Electors are permitted to vote; only Electors can name in their ballots for whom they voted; and only Congress gets to count the votes. Thus, the Twelfth Amendment prohibits anyone other than Electors from choosing who

---

[1] Also, Plaintiffs are filing a motion for leave to amend their complaint which adds claims under 42 U.S.C. § 1983 for Defendants' violations of Plaintiffs constitutional rights. Because the relief requested is both for violations of their rights that have already occurred and for prospective injunction, the claims are not moot. Further, as detailed in the motion, Plaintiffs have standing to assert these § 1983 claims.

shall be named on the ballots. The effect of statutes like C.R.S. § 1-4-304 is to have the majority of voters in a state choose who will be named on the Elector's ballots instead of the Electors themselves. This violates the plain text of the Twelfth Amendment which precludes anyone from dictating for whom the Electors should vote. *See Ray v. Blair*, 343 U.S. 214, 232 (1952) (J. Jackson dissenting: "No one faithful to our history can deny that the plan originally contemplated, what is implicit in its text, that Electors would be free agents, to exercise an independent and nonpartisan judgment as to the men best qualified for the Nation's highest offices.").[2]

And if there is any ambiguity in whether the Electors are to be free agents, and thus cannot be bound by C.R.S. § 1-4-304 to vote for specific candidates or persons, Alexander Hamilton resolved any ambiguity in Federalist No. 68 when he stated that the election of the President and Vice President is left "not to any preestablished body, but to men chosen by the people for the special purpose and at the particular conjuncture." He went on to flesh out why the Electoral College must be independent:

> It was equally desirable that the immediate election should be made by men most capable of analyzing the qualities adapted to the station and acting under circumstances favorable to deliberation, and to a judicious combination of all the reasons and inducements which were proper to govern their choice. A small number of persons, selected by their fellow-citizens from the general mass, will be most likely to possess the information and discernment requisite to so complicated an investigation.

---

[2] Defendants are simply incorrect when they assert *Ray* permits the binding of Electors because it allowed parties to require Electors to take an oath of loyalty. First, the Court in *Ray* explicitly withheld from concluding a political party could actually enforce a pledge to vote for a certain candidate. Second, *Ray* was not deciding a case where a state law compelled an Elector to vote for a certain candidate and, if they did not, the Elector would face possible criminal penalties. At most, a private political party could kick someone out of the party, but they could not criminally sanction them. Third, an analogy easily explains the Defendants' flawed logic. If there was a Nazi Party in this election and the party made its candidates for state legislature swear an oath to implement laws to discriminate against Jews, that would not similarly allow the state to require its state legislators to swear a similar oath or require them to implement such laws.

This process of election affords a moral certainty that the office of President will seldom fall to the lot of any man who is not in an eminent degree endowed with the requisite qualifications. Talents for low intrigue, and the little arts of popularity, may alone suffice to elevate a man to the first honors in a single State; but it will require other talents, and a different kind of merit, to establish him in the esteem and confidence of the whole Union, or of so considerable a portion of it as would be necessary to make him a successful candidate for the distinguished office of President of the United States.

Because the Twelfth Amendment precludes anyone from choosing the President or Vice President other than the Electors, C.R.S. § 1-4-304 is unconstitutional because the choice for President and Vice President is made by a certain percentage of voters who are not Electors.[3]

**B.     C.R.S. § 1-4-304 and Defendants' Actions Violate the Twelfth Amendment and 3 U.S.C. § 15**.

Electoral votes are submitted to the "President of the Senate" who then must "open all the certificates and the votes shall then be counted." U.S. Const. Amend. XII. Only Congress counts and objects to electoral votes. 3 U.S.C. § 15. If an objection is made, Congress determines whether to count or reject an electoral vote. *Id*. Thus, the power to count electoral votes exclusively rests with Congress, and only Congress can reject electoral votes.

---

[3] Defendants reliance on lower courts' rulings on binding statutes is unavailing. In total, two trial court judges and one state appellate court have found these statutes might be constitutional. The 1933 case from New York's trial court (the "Supreme Court" in New York is its trial court, not its highest court of appeals, *see* http://www.nycourts.gov/courts/cts-NYC-SUPREME.shtml), *Thomas v Cohen*, 262 N.Y.S. 320 (Sup. Ct. 1933), is of such little value that in more than 80 years no court cited to it for any proposition until this Court's December 21, 2016 order and a December 15, 2016 order in a contemporaneous Elector case in Washington. The decision in *State ex rel. Neb. Republican State Cent. Comm. v. Wait*, 138 N.W. 159, 163 (Neb. 1912) is fatally flawed. Its fundamental premise, relied on by this Court, is that Electors voting for someone other than the party nominee "deprive[s] the citizens of their right to vote." Document 27 at p. 7. The Constitution does not create a right of citizens to vote for President or Vice President, as uncomfortable as that reality may be. *See* U.S. Const. Amend. XII. At best, if a state so desires, citizens may vote for Electors, which is merely another part of our representative form of government – it is not direct democracy. No case has decided the present issue, no matter how much Defendants argue otherwise. "It is elementary that an opinion is not binding precedent on an issue it did not address." *Merrifield v. Bd. of County Comm'rs*, 654 F.3d 1073, 1084 (10th Cir. 2011). *See also Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.")

But C.R.S. § 1-4-304 unconstitutionally usurps Congress' authority to count and reject electoral votes. If there was every any ambiguity about this, it was made patently clear on December 19, 2016 when Colorado Elector Micheal Baca cast his vote for John Kasich instead of Hillary Clinton. After he cast his vote, Defendant Williams read the vote, invoked C.R.S. § 1-4-304, rejected the vote, removed Mr. Baca as an Elector, and seated a new Elector who voted for Hillary Clinton. Thus, Defendant Williams, using C.R.S. § 1-4-304, usurped Congress' exclusive authority to count and object to electoral votes in violation of the Twelfth Amendment and 3 U.S.C. § 15.

Defendants' argument that the power to appoint Electors in Art. II § 1 thereby gives them "plenary" authority over Electors is wrong. Defendants' argument conflates the power to appoint with a non-existent power to control Electors once appointed. Article II and the Twelfth Amendment contain mandatory language for the Electors' conduct – they shall meet in their respective states and vote by ballot, they shall make a list of persons voted for and of the number of votes for each, they shall sign and certify, and transmit the list of persons voted for to the President of the Senate. No state power over Electors, who perform duties given them by the Constitution, other than appointment, is in the text of the Constitution. The states' power to control Electors' votes after appointment is obviously absent from the text of the Constitution and to imply such power stretches and perverts the plain text of our Constitution.

Defendants' appointment power does not include the power to control Electors' votes. A condition on how to vote removes the Electors' constitutional duty and substitutes the states'

judgment for the Electors.' This violates the fundamental purpose of the Electoral College.[4] *See* Federalist No. 68.

Once Electors are appointed, a state's substantive role in the presidential election is ended – from that point, the state is acting ministerially by providing a place for voting, ballots for voting, and administrative assistance to complete the voting. The Constitution specifies that it is the Electors who have the power, and duty, to take all actions after they are appointed. Thus, nothing in state law can constitutionally restrict the Electors in the exercise of any of their constitutionally assigned powers and duties, including the right to vote itself. *See* Michael Stokes Paulsen, The Constitutional Power of the Electoral College, Public Discourse (Nov. 21, 2016 (available at www.thepublicdiscourse.com/2016/11/18283/)).[5]

C.R.S. § 1-4-304 purports to give Defendants authority to count, reject, and control electoral votes. Thus, it is unconstitutional and Plaintiffs have stated a claim for relief.

### C.     Federal Law Pre-Empts C.R.S. § 1-4-304.

The laws of the United States "shall be the Supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Consistent with the Supremacy Clause, the Supreme Court has "'long recognized that state laws that conflict with federal law are 'without effect.'" *Altria Grp., Inc. v. Good*, 555 U.S. 70, 75

---

[4] Defendants' reliance on *McPherson v. Blocker*, 146 U.S. 1, 35-36 (1892) is misplaced. Because a state may choose one way to select its Electors rather than another does not imply a power to control them after appointment. So too is their reliance on the Festa article, "The Origins and Constitutionality of State Unit Voting in the Electoral College." Just because legislation impinging on a state's discretion to use the winner-take-all allocation of electoral votes may violate the Tenth Amendment, does not mean the Constitution forbids a state from directing how an Elector votes. The Constitution's text limits states' powers to appointment only.

[5] Defendants' appointment=control argument is maybe better understood in an independent contractor context. Once the contractor is appointed, she has the power and right to do the job as she sees fit and appropriate. Otherwise, if the one hiring the contractor retains control the contractor is no longer independent but is an employee. Here the Elector is appointed, *i.e.* hired, and retains her independence to do her duties as spelled out by the Constitution.

(2008) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). The Supreme Court has summarized that "Pre-emption may be either expressed or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Gade v. Nat'l Solid Wastes Mgmt. Assoc.*, 505 U.S. 88, 98 (1992) (citations omitted).

Implied pre-emption exists where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), or it is "impossible for a … party to comply with both state and federal law," *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 899 (2000). *See also Colo. Dep't of Pub. Health & Env't v. United States*, 693 F.3d 1214, 1222 (10th Cir. 2012). Thus, a state law is pre-empted if it "interferes with the methods by which the federal statute was designed to reach [its] goal." *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 769 (10th Cir. 2010).

Here, C.R.S. § 1-4-304 interferes with and stands as an obstacle to the accomplishment of the federal system for presidential elections. Colorado's statutes create additional requirements and burdens on Electors not envisioned or authorized in the Constitution or federal law.

Colorado's statute binding Electors conflicts with Article II §1, the Twelfth Amendment and the Vote Counting Act, 3 U.S.C. § 15. Article II § 1 provides for the appointment of Electors, the number of Electors, who cannot be an Elector, and requires the Electors to vote for President and Vice President. The Twelfth Amendment provides that only the Electors are entitled to vote for President and Vice President and dictates how those votes are to be cast.

Any state statute requiring Electors to vote in a certain way conflicts with this explicit constitutional process. The state's powers for such elections are limited to the appointment of Electors in any such manner as the state legislature determines. Thus, Colorado could appoint Electors who are friends of the governor, who own a certain breed of dogs, or who belong to the

rotary club. Once the appointment power is exercised the state's duty for the Electors ends. *See* Paulsen, The Constitutional Power of the Electoral College.

By mandating how an Elector votes, Colorado makes it "impossible for" the plaintiffs, or any Elector "to comply with [their duties] under both state and federal law." *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 899 (2000). Binding statutes also serve "as an obstacle to accomplishment and execution of the full purposes and objectives of Congress" as expressed in the Constitution. *Id.*

So too does Colorado's statute criminalizing an Elector's conduct by voting for a person other than the candidate of the party to whom the Elector was to vote. The criminal penalty for so doing, *i.e.,* violating the oath of office which can be a misdemeanor or a felony, makes it impossible for an Elector to carry out his or her federal duty without violating state criminal statutes and risking prosecution for doing a federally mandated duty in a way other than the state prescribes. Again, the Constitution mandates that only Electors are entitled to vote, thus prohibiting laws requiring an Elector to vote in a certain way. The state's power to appoint an Elector does not carry with it the implied power to control how that person votes. Indeed once an Elector is appointed, he or she is preforming solely federal duties and functions – casting votes for President and Vice President.

## II.     This Court Has Subject Matter Jurisdiction.

### A.     The Claims Are Capable of Repetition But Evade Review.

A black-letter-law exception to the mootness doctrine is a claim that is "capable of repetition, yet evad[es] review." *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498 (1911). *See also*, *Roe v. Wade*, 410 U.S. 113, 125 (1973); Chemerinsky, Erewin, Federal Jurisdiction, § 2.5.3, pp. 131-135 (1991). For this exception to apply, first there must be a "reasonable expectation that the same complaining party would be subjected to the same action again."

*Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Second, the injury must be inherently limited in duration so that it is always likely to become moot before litigation is completed. *See* Federal Jurisdiction at p. 132.

One of the areas where the Supreme Court often applies this exception to the mootness doctrine is in cases just like this one: cases involving election laws. *Id.* at p. 133. This is because the election is often over before litigation ends. *See Moore v. Ogilvie*, 435 U.S. 765, 774 (1978). In that case, the plaintiff was a candidate for office and the law he challenged related to obtaining a certain amount of signatures to get on the ballot. Although the election occurred before the Court decided the case and there was no guaranty the same person would run for office again, the Court held that the case presented a "wrong capable of repetition, yet evading review." *Id.*

The Plaintiffs were elected by members of the Democratic Party to be Electors. In fact, prior to the 2016 election, Plaintiff Baca had been an Elector on two prior occasions (2008 and 2012).[6] Defendants' could not challenge the constitutionality of C.R.S. § 1-4-304 until they were Electors. They were not certified as Electors by the Democratic Party until August 24, 2016. And because Colorado appoints Electors based on which party won the popular vote for President in the state, until the results of the popular vote for President in Colorado were known on or about November 9, 2016, Plaintiffs could not know they were likely to cast ballots in the Electoral College until then. Indeed, had they brought these claims before November 9, 2016, Defendants would likely have moved to dismiss based on ripeness.

On November 17, 2016, Plaintiff Nemanich asked Defendants if C.R.S § 1-4-304 would be enforced and would require him to vote for Hillary Clinton and Tim Kaine. Defendants

---

[6] 2008: https://www.archives.gov/federal-register/electoral-college/2008-certificates/
2012: https://www.archives.gov/federal-register/electoral-college/2012-certificates/

refused to answer the question. As soon as practicable thereafter, Plaintiffs sought and retained undersigned counsel and filed the Complaint on December 6, 2016.[7]

Plaintiffs' votes as members of the Electoral College were cast on December 19, 2016. Thus, there was a mere six weeks from the date their claim became ripe to the time when they cast their ballots to file a complaint, conduct discovery (if any), file substantive/dispositive motions, and obtain a hearing or trial on the merits. The rules of civil procedure preclude the claims in this case from proceeding that fast. Simply put, "litigation could never be completed before the election." Federal Jurisdiction at p. 133.

Because there is a reasonable chance that Plaintiffs will be Electors again and these claims cannot be adjudicated during the tiny window between the popular vote for President on the second Tuesday of November and the date they cast their ballots on the first Monday after the second Wednesday in December, the claims are not moot because they are capable of repetition, yet evade review.

   **B.   Plaintiffs Have Standing.**

       *1.    The claims cannot be reviewed within the short time frame provided by federal law.*

Plaintiffs unquestionably had standing to bring their claims as Electors in December 2016. Because this Court could not resolve the matter fully before December 19, 2016, Defendants' standing argument, if successful, effectively prevents these claims from ever being adjudicated. The fact that the election is over and Plaintiffs cast their Electoral College ballots does not eviscerate standing. There is a reasonable chance Plaintiffs will again be Electors, thus they would have standing to bring these claims again, but before they could be fully adjudicated, their time in office as an Elector would pass because the next election would be over.

---

[7] Defendants did not certify Plaintiffs as Electors until December 9, 2016.

The exception to the mootness doctrine, *see* Section II(A) *supra*, exists to redress injuries for which time moves faster than the courts. Because the time during which someone is an Elector is so short (at most four months), the same logic, case law, and reasoning that permit injuries capable of repetition yet evading review to be heard must apply to the Plaintiffs' standing in this case as well. Otherwise, the issues presented in this case can never be adjudicated because no one will have standing long enough as an Elector. This undermines the Supreme Court's decision in *Ray v. Blair*, which indicates the question presented in this case is one that can and should be addressed.

For example, if Plaintiffs are again Electors for the 2020 election, they would not become Electors for the Democratic Party until, at the earliest, sometime in August 2019. They would need to immediately file these same claims – even though they may not actually become members of the Electoral College if the Democratic candidates do not win the popular vote in Colorado in November 2019 – and those claims would have to be fully adjudicated on their merits prior to the first Monday after the second Wednesday in December. This Court's own experience with the timing of civil lawsuits – declaratory judgment actions or otherwise – demonstrates that fully adjudicating those claims in less than four months is unlikely if not impossible. Because Plaintiffs were Electors and are reasonably likely to be Electors again, they have standing.

       2.     *Plaintiffs are federal officers or were, at least, performing exclusively federal duties.*

The only job of an Elector is to cast ballots for President and Vice President as dictated by the Constitution. *See* U.S. Const. Amend. XII; 3 U.S.C. § 8. Electors are only a creation, and exist as a function of federal law. The Constitution limits who can and cannot be an Elector. *See* U.S. Const. Art. II § 1, Amend. XIV § 3. Electors must carry out their duties pursuant to the

Constitution and 3 U.S.C. §§ 1 *et. seq.* Electors perform no state duties and the text of the Twelfth Amendment sets forth how they are to vote for the President and Vice President, both of which are federal offices. Plaintiffs are thus federal officers and even if they are not federal officers, their duties are exclusively federal and states cannot interfere with those duties.

### 3. *Plaintiffs are personally affected.*

Even if Plaintiffs are state officers, they have a personal stake in this case, not merely an official one. As the Tenth Circuit noted, Defendants' reliance on *Columbus & Greenville Ry. v. Miller*, 283 U.S. 96, 99-100 (1931) is not persuasive since the law challenged by the tax official in that case was valid. Here, C.R.S. § 1-4-304 violates Plaintiffs' personal constitutional rights.

As demonstrated on December 19, 2016, Defendants believe they can, and will, infringe on Electors' rights to cast ballots for whomever Electors believe to be the best persons to hold the offices of President and Vice President by removing Electors from office, rejecting Electors' votes, and intimidating Electors through the threat of criminal charges. The notion that having the honor of voting for President and Vice President is merely an official and not a personal matter is absurd. Voting by its nature is very personal and involves a personal decision. This was demonstrated on December 19, 2016, and the lead up to the vote when Electors from around the country, including Plaintiffs, made their personal views made known. Defendants' efforts to coerce Plaintiffs into voting in a manner Plaintiffs did not want to personally affected Plaintiffs. Thus, Plaintiffs are personally affected by the unconstitutional acts of Defendants and the unconstitutional law, C.R.S. § 1-4-304, and have standing.[8]

---

[8] The question of First Amendment protection of Plaintiffs' votes is inextricably intertwined with the question of whether Electors are able to exercise their free will in voting for President and Vice President. If they are entitled to exercise their free will because the Twelfth Amendment only allows Electors to cast ballots, *see* Section I(A) *supra*, then the votes are fundamentally speech and the state cannot compel Electors to vote for specific candidates or coerce and intimidate Electors into voting a certain way. Moreover, Defendants, on the one hand, argue

14

### CONCLUSION

*Ray v. Blair* left open the question presented here, demonstrating that it is a question that can and should be answered. These are the right plaintiffs at the right time with the right facts to answer the question. Simply because a question may be difficult does not mean that it should not be answered. No federal court has ruled on the constitutionality of state binding statutes, nearly all of which popped up after *Ray v. Blair*, including Colorado's. The question is ripe for decision.

The notion that because it is now "popular" to have binding statues (Motion at p. 8) is irrelevant. It was once "popular" for states to permit slaves but that didn't make it constitutional; it was once "popular" for states to have anti-miscegenation laws but that didn't make it constitutional; and it was once "popular" for states to discriminate against homosexuals but that didn't make it constitutional. Colorado's binding statute is unconstitutional and these Plaintiffs, at this time, and in this case, have standing to obtain the relief requested. The motion should be denied.

---

Plaintiffs' votes are purely ministerial and thus lack any protection as free speech. Defendants, on the other hand, rely on *Gray v. Sanders*, 372 U.S. 368 (1963) to assert the Fourteenth Amendment is not applicable and is not violated by Colorado's winner-take-all system. But *Gray* said the Electoral College was created because of "specific historical concerns." Those concerns are the very ones that Plaintiffs raised in their Complaint: binding statutes such as Colorado's undermine the purpose of the Electoral College, which was, as Alexander Hamilton clearly explained, to prevent the election of a demagogue like Donald Trump. Defendants can't have it both ways, either the Electoral College exists to allow Electors to vote for the best candidate in each Elector's opinion, thus making the votes speech, or the Electoral College exists merely as a rubber stamp for a popular vote. The words of the Founders prove that it is the former and not the latter.

Respectfully submitted this 24th day of February, 2017.

By:   */s/ Jason B. Wesoky*
          Jason B. Wesoky, Esq.
          1331 17th Street, Suite 800
          Denver, CO  80202
          Phone:    (303) 623-9133
          Fax:      (303) 623-9129
          E-mail:    jason.w@hamiltondefenders.org

          *Attorney for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 24th day of February, 2017, a true and correct copy of the above and foregoing **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** was filed with the Court and served as via ECF/Pacer on the following:

Grant T. Sullivan
LeeAnn Morrill
Matthew David Grove
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
Phone: (720) 508-6349
Fax:    (720) 508-6038
Email: grant.sullivan@coag.gov
Email: leeann.morrill@coag.gov
Email: matt.grove@coag.gov

*Attorneys for Defendants*
*JOHN W. HICKENLOOPER, JR., CYNTHIA H. COFFMAN,*
*and WAYNE W. WILLIAMS*

Christopher Owen Murray
Brownstein Hyatt Farber Schreck, LLP-Denver
410 17th Street, Suite 2200
Denver, CO 80202-4432
Phone: (303) 223-1100
Fax:    (303) 223-1111
Email: cmurray@bhfs.com

*Attorney for Intervenors*
*COLORADO REPUBLICAN COMMITTEE, DONALD J.*
*TRUMP, and DONALD J. TRUMP FOR PRESIDENT, INC.*

*/s/ Audrey Dakan*
Audrey Dakan, Paralegal

17