**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-2986

POLLY BACA and ROBERT NEMANICH,

Plaintiffs

v.

JOHN W. HICKENLOOPER JR., in his official capacity as Governor of Colorado, CYNTHIA H. COFFMAN, in her official capacity as Attorney General of Colorado and individually, and WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State and individually.

Defendants, and

COLORADO REPUBLICAN COMMITTEE, DONALD J. TRUMP, and DONALD J. TRUMP FOR PRESIDENT, INC.,

Intervenors

---

## AMENDED COMPLAINT

---

Plaintiffs, through undersigned counsel, for their amended complaint against the above-named Defendants aver as follows.

### General, Jurisdictional and Venue Allegations

1.  Polly Baca is a resident of the City and County of Denver, Colorado and, pursuant to C.R.S. §1-4-302, was an Elector for the 2016 presidential election.

2.  Robert Nemanich is a resident of El Paso County, Colorado and, pursuant to C.R.S. §1-4-302, was an Elector for the 2016 presidential election.

3.  Plaintiffs intend to run as Electors for the Democratic Party for the presidential election in 2020.

4. Defendant John W. Hickenlooper is the Governor of Colorado and, as its chief executive, has the power to enforce the laws of the State of Colorado, including C.R.S §§ 1-4-304(5) and 1-13-723.

5. Defendant Cynthia H. Coffman is a Colorado resident and is the Attorney General of Colorado and, in such capacity, enforces the laws of the State of Colorado, including C.R.S §§ 1-4-304(5) and 1-13-723.

6. Defendant Wayne W. Williams is a Colorado resident and is the Secretary of State of Colorado and, as such, gives notice of the time and place for the Presidential Electors to vote, provides documents pursuant to C.R.S. § 1-4-304, certifies the results of the Presidential Electors' balloting and votes, and, upon information and belief has authority to replace a Presidential Elector.

7. This Court has jurisdiction over the subject matter of this dispute as it relates to a federal question, 28 U.S.C. § 1331 as well as 28 U.S.C. §§ 2201 and 2202.

8. The federal question presented by this case is the constitutionality of Colorado's Presidential Electors statute, C.R.S. § 1-4-304(5), which requires Electors to vote "for the presidential candidate and, by separate ballot, vice-presidential candidate who received the highest number of votes at the preceding general election in this state.", and the constitutionality C.R.S § 1-13-723 which makes it a crime for any officer including an Elector "upon whom any duty is imposed by any election law [including C.R. S. § 1-4-304(5)] who violates his duty or neglects or omits to perform the same . . . ."

9. These Colorado statutes violate Article II of the U.S. Constitution, the First Amendment, the Twelfth Amendment, and the Fourteenth Amendment.

10. These Colorado statutes also violate C.R.S. § 1-13-713 which makes it unlawful for any person to interfere with the free exercise of the elective franchise of an Elector.

11. Although the 2016 Presidential election is over, the effects of the Colorado statutes involving the rights and duties of presidential Electors and the criminalization of an Elector's conduct is capable of repetition, yet evading review, every four years. With the length of a presidential Elector's actual service lasting for a single day, and the designation of someone as being a presidential election never being made more than six weeks prior to that one day, it is impossible for any court case to be completed in time.

12. Colorado, thorough Defendants, have violated Plaintiffs' constitutional rights. Unless this Court issues the relief requested, Plaintiffs' constitutional rights will be violated by Colorado, through the various Defendants. No state, including Colorado, can compel any person, including Plaintiffs, to cast his or her vote for any particular candidate whether in a general election, a special election, or the convention of the Presidential Electors. Further, any state law that dilutes the votes of its Electors violates the Equal Protection Clause.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b).

**FACTUAL ALLEGATIONS**

14. Plaintiffs incorporate the prior allegations as if fully set forth herein.

15. The United States Constitution sets forth the means by which the President and Vice President of the United States are elected every four years.

16. The Constitution calls for election to the office of President and Vice President by Presidential Electors selected by the respective states.

17. The Constitution sets forth qualifications and disqualifications for Presidential Electors, namely, that neither Senators, Representatives, nor person holding an office of trust or

3

profit under the United States, shall be appointed, and no one engaged in insurrection or rebellion, or who gives aid or comfort to enemies can be an Elector.

18.     The Constitution sets forth the duties of Presidential Electors, namely, that they shall meet in their respective states, and vote by ballot for two persons, of whom one at least shall not be an inhabitant of the same state with themselves, make a list of all the persons voted for, and of the number of votes for each. Said list is to be signed, certified, and transmitted sealed to the seat of the government of the United States, directed to the President of the Senate and the Constitution sets forth the duties of the President of the Senate when those lists are received.

19.     The purpose of the Electoral College, which is made up of Electors such as Plaintiffs, is to elect the President and Vice President of the United States. There is nothing in the Constitution that permits or requires Electors to vote the same as the popular vote in their states. For the first 100 years of our history, the majority of states did not hold popular votes for the election of president and vice president and, instead, the states themselves appointed the Electors who voted for president and vice president.

20.     Never has the Constitution allowed for foreign influences, threats, or intimidation to restrain or dictate the votes placed by Presidential Electors.

21.     Both federal and state statutes enacted over the years since the Constitution was ratified have reaffirmed the importance of the independence of voters at every level of elected office, from dog catcher on up to the president. These statutes include C.R.S. § 1-13-713 and 18 U.S.C. § 594.

22.     C.R.S. § 1-13-713 makes it unlawful for any person to interfere with the free exercise of any elective franchise by any Elector or to compel, induce or prevail upon any

Elector either to give or refrain from giving his vote at any election provided by law or to give or refrain from giving his vote for any particular person in any such election.

23. 18 U.S.C. § 594, penalizes anyone who "intimidates, threatens, coerces" or attempts the same "for the purpose of interfering with the right of such other person to vote or to vote as he may choose, or of causing such other person to vote for, or not vote for, any candidate for the office of President, Vice President, Presidential Elector . . . at any election held solely or in part for the purpose of electing such candidate …."

24. Notwithstanding the Constitutional structure for functioning of Presidential Electors (the "Electoral College") and longstanding state and federal criminalization of any actions to intimidate, threaten, or coerce votes, some individual states have passed laws that do just that – intimidate, threaten, and coerce the votes placed by Presidential Electors for President and Vice President. Two such statutes are those challenged in this case - C.R.S. §§ 1-4-304(5) and 1-13-723.

25. As of the date of filing this case, Plaintiffs were duly authorized Presidential Electors of the Democratic Party and met all qualifications to be Electors. Plaintiffs were nominated as a Presidential Elector at the Democratic Convention held on April 16, 2016. Each is a duly authorized Presidential Elector of the Democratic Party.

26. Plaintiffs continue to meet the qualifications to be selected again as presidential Electors in subsequent elections and are thus reasonably likely to face the situation addressed in the complaint in a subsequent presidential election.

27. C.R.S. § 1-304(5) requires that Presidential Electors vote consistent with the popular vote in the state for president and vice president and C.R.S. § 1-13-723 makes it a crime

for any Elector who violates any duty or who neglects or omits to perform a duty imposed by any election law.

28. The Democratic Presidential candidate in 2016 was Hillary Rodham Clinton. The Democratic Vice-Presidential Candidate was Timothy Kaine.

29. Though the Democratic nominees for President and Vice-president won the nationwide popular vote by at least 2.8 million votes, and also won the Colorado popular vote, the various states' popular votes indicated that Donald Trump and Michael Pence (the Republican presidential and vice presidential nominees) would win the majority of Electoral college votes on December 19, 2016 if the Electors in each state voted consistent with the popular vote in their respective states.

30. During the time period between the national election day and the date for the Electoral college voting to occur, U.S. intelligence agencies confirmed that they possessed evidence showing foreign interference in the presidential election with the purpose of favoring Donald J. Trump and undermining Hillary R. Clinton in that election.

31. Plaintiff and many other Presidential Electors considered this information of foreign influence in the election to be a matter of grave importance and some Electors took affirmative steps to obtain more information from the then current President, Barrack Obama, intelligence agencies, or Congress.

32. Presidential Electors in the states of Arizona, Arkansas, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Minnesota, Missouri, New Hampshire, New Jersey, New York, North Dakota, Pennsylvania, Rhode Island, South Dakota, Texas, and West Virginia ("Unbound Presidential Electors") were not required to simply place a pre-determined vote consistent with their state's popular vote, and were free to consider the possibility of foreign

influence on behalf of one of the presidential candidates as part of their decision making process before placing their Electoral votes.

33. Many states, including Colorado, require their Presidential Electors to vote consistent with the popular vote in the state and thus Plaintiffs were not free to consider the possibility of foreign influence on behalf of one of the presidential candidates as part of their decision making process before placing their Electoral votes because Colorado and 28 other states have laws in place requiring their Presidential Electors to vote consistent with the persons and/or party corresponding to the popular vote in the state and setting forth some type of adverse action to be taken if they do not.

34. C.R.S. § 1-4-304(5), requires Electors to vote "for the presidential candidate and, by separate ballot, vice-presidential candidate who received the highest number of votes at the preceding general election in this state."

35. C.R.S. § 1-13-721 makes it a crime and provides for punishment of any officer [including an Elector] who violates his duty or neglects or omits to perform any duty imposed by any election law.

36. These statutes contain no exceptions whatsoever, not if the candidate who received the highest number of votes died, became physically or mentally unable to assume office, or absconded with embezzled funds to the jungles of South America. In fact, even if the candidate who received the highest number of votes was discovered to be a foreign agent, these statutes would still require Presidential Electors to vote for them.

37. This statutory requirement pre-determining the vote to be cast by Presidential Electors violates the plain language of Article II, Section 1, of the U.S. Constitution, as amended

7

by the Twelfth Amendment, which indicates that there should not be a way to know in advance what the vote will be.

38.     Furthermore, this Colorado requirement pre-determining the vote to be cast by Presidential Electors violates the Founders' intent that the Presidential Electors be a deliberative and independent body free to cast votes for whomever they deem to be the most fit and qualified candidates as described by Alexander Hamilton in The Federalist No. 68, that the immediate election should be made by men most capable of analyzing the qualities adapted to the station." The Electors (the "men") would be "most likely to possess the information and discernment requisite to such complicated investigations." The Electors were created so that they, as a deliberative body, would be "detached" and less prone to be influenced by the "heats and ferments" of a raucous election. The Electors would help ensure "the office of President [would] never fall to the lot of any man who is not in an eminent degree endowed with the requisite qualifications." *Id.* The Electors create an "obstacle" to "cabal, intrigue, and corruption" and prevent "foreign powers [from] gain[ing] an improper ascendant in our councils."

39.     Thus, despite the plain language of Article II of the U.S. Constitution, as amended by the Twelfth Amendment, and the Founders' intent that the Presidential Electors be a deliberative and independent body free to cast votes for whomever they deem to be the most fit and qualified candidates, the Colorado statutes prevented such by Plaintiffs and threaten to prevent such in future presidential elections.

40.     The Constitution and the Founders' intent should be protected under C.R.S. § 1-13-713 which makes it a criminal offense for any person to "impede, prevent, or otherwise interfere with the free exercise of the elective franchise of any Elector or to compel, induce, or

prevail upon any Elector either to give or refrain from giving his vote at any election provided by law or to give or refrain from giving his vote for any particular person . . .at any such election."

41. The Constitution and the Founders' intent should also be protected under 18 U.S.C. § 594 which makes it a criminal offense to intimidate, threaten, or coerce votes, including specifically votes for President and Vice President.

42. Coercion via statute is no different in result than independent coercion because such coercion interferes with the freedom of speech (to voice questions and concerns about the fitness and qualification for the office of any potential candidate for the office of President and Vice-President) and the obligation and right to act as part of the Presidential Electors to "analyz[e] the qualities adapted to the station," "act[]under the circumstances favorable to deliberation, and to a judicious combination of all the reasons and inducements which were proper to govern their choice" and to "possess the information and discernment requisite to such complicated investigations."

43. Though Hillary Clinton and Timothy Kaine won the majority vote in Colorado and are qualified for office, Plaintiffs should not have been constitutionally compelled to vote for them. Plaintiffs were entitled to exercise their judgment and free will to vote for whomever they believed to be the most qualified and fit for the offices of President and Vice President, within the circumstances and with the knowledge then known on December 19, 2016, whether those candidates were Democrats, Republicans, or from a third party.

44. Plaintiffs were forced, coerced, and intimidated by Defendants into their decision of how to vote for the offices of President and Vice-President.

45. The Colorado Secretary of State, Defendant Williams, stated that he would "remove the Elector" who failed to "vote for the presidential/vice-presidential ticket that receives the most votes in the state" and would "seat a replacement Elector."

46. Upon information and belief, Defendant Coffman, the Attorney General of Colorado, either at the direction of the Governor or the direction of the Secretary of State, would enforce and support the actions of the Secretary of State and would, on information and belief bring criminal charges against the Plaintiffs had they not voted for Mrs. Clinton and Mr. Kaine for President and Vice President.

47. Defendants, under color of state law, failed and refused to disclaim the possibility that Plaintiffs would be criminally prosecuted under C.R.S. § 1-13-723.

48. Defendants, under color of state law, violated C.R.S. § 1-13-713 and 18 U.S.C. § 594 by intimidating, threatening, and coercing Plaintiffs into their decision of how to vote for the offices of President and Vice-President.

49. Defendant Coffman, as Attorney General with knowledge of the unconstitutionality of C.R.S. §§ 1-4-304(5) and 1-13-723 has failed to disclaim any intent to criminally prosecute Presidential Electors in the future, thus prospectively chilling their Constitutional rights and duties. In fact, Defendant Williams referred Elector Micheal Baca to Defendant Coffman for criminal investigation after Mr. Baca voted for John Kasich instead of Hillary Clinton for President. Defendant Williams then rejected Mr. Baca's vote, removed Mr. Baca from office, and had him replaced by another Elector.

50. Rejecting Electoral votes and removing Plaintiffs or any Elector and replacing them violate Article II and the Twelfth Amendment. Article II as amended by the Twelfth Amendment, provides that Plaintiffs "shall … vote by ballot for President and Vice President."

Nothing within the Constitution permits states to remove and replace duly appointed and elected Electors.

51. Colorado's binding statute perpetuates a violation of the Equal Protection Clause of the Fourteenth Amendment by diluting the votes of Colorado's Electors.

52. Removing Plaintiffs and replacing them violates the First Amendment's guarantees of freedom of speech. Voting, *i.e.* political speech, is the highest and most protected form of speech. Removing Plaintiffs and replacing them compels speech in violation of the First Amendment.

53. While the requirement that Plaintiffs sign a pledge is constitutional pursuant to *Ray v. Blair*, 343 U.S. 214 (1952), the Supreme Court left open the question of whether enforcement of such pledges, or penalties for violating the pledges, was constitutional.

54. Similarly, while Article II, Section 1 provides that states "shall appoint, in such Manner as the Legislature thereof may direct," Electors, the Constitution does not provide that the states shall have the ability to penalize Electors or remove Electors. Once an Elector is appointed, removal of the Elector violates Article II and the Twelfth Amendment.

55. Removing an Elector for refusing to vote in conformance with the popular vote in his or her respective state, as set forth above, is tantamount to compelled speech. It also renders superfluous the Electoral College and is antithetical to the purpose of the Electoral College as articulated by Alexander Hamilton, for if the Electors are merely to vote for the candidate who won the popular vote in their state, then there is no need for the Electoral College at all. Also, by forcing Electors to vote a certain way, Colorado has created a winner-take-all system when it comes to awarding its Electoral votes, a system that violates the Equal Protection Clause because it dilutes Colorado's Electors' votes and the votes of Colorado citizens.

11

56.     Prospective Injunctive relief is necessary to prevent the Defendants from violating Plaintiffs' constitutional rights. Without such relief, the Defendants will remove Plaintiffs as Electors and replace them with someone who will presumably vote the way Defendants want him/her to vote and Plaintiffs' rights will be irreparably harmed. Plaintiffs will be precluded from voting for the President and Vice President since the "general" election on the first Tuesday of November 2020 is not an actual vote for the President and Vice President, but rather a vote for Electors. *See* Colorado Constitution, Schedule, Section 20 ("after the year [1876] the Electors of the Electoral college shall be chosen by direct vote of the people.").

57.     This Court can provide declaratory relief because an actual and substantial controversy now exists between Plaintiffs and the Defendants with respect to Plaintiffs' rights and Defendants' rights and duties under C.R.S. § 1-4-304(5). Plaintiffs' constitutional rights will be directly, substantially, and irreparably violated, affected, and injured unless and until this Court declares any law or regulation requiring Electors to vote consistent with the popular vote in their state, and any law or regulation removing or otherwise penalizing an Elector for not doing so, is unconstitutional.

### FIRST CLAIM FOR RELIEF
(Declaratory Relief)

59.     Plaintiffs re-allege and incorporate by reference paragraphs 1-58 above.

60.     C.R.S. § 1-4-723 calls for criminal penalties against Plaintiffs if they did not place their presidential Electoral votes for Mrs. Clinton and Mr. Kaine.

61.     Plaintiffs' stated intention to not necessarily place their votes for Hillary Clinton and Tim Kaine, but instead to act with the deliberative intent and care for choosing of qualified persons for the office of President and Vice President called for in the U.S. Constitution, created

a risk of criminal prosecution by the State of Colorado and thus creates an actual controversy within the meaning 28 U.S.C. § 2201(a).

62. The threat of criminal prosecution against Plaintiffs if they acted in any manner in their capacity as Presidential Elector other than as a rubber stamp or ceremonial vote consistent with the popular vote in Colorado, constitutes a violation of Plaintiffs' obligations under the U.S. Constitution, Art. II, Sec. 1, as amended by the Twelfth Amendment, and their rights to freedom of speech under the First Amendment of the U.S. Constitution.

63. The threat of criminal prosecution chilled Plaintiffs' exercise of their Constitutional rights and duties, constituting harm.

64. The United States Supreme Court has already partially addressed the question of a party pledge that required an Elector for a primary election to sign a pledge as to whom they would vote and found the pledge itself constitutional (*Ray v. Blair*, 343 U.S. 214 (1952)), but the Supreme Court left open the question of whether enforcement of such pledges, or penalties for violating the pledges, or state statutes dictating what votes would be placed, was constitutional. This question is now ripe for review.

65. Article II, Section 1 provides that states shall "appoint" Electors, but the Constitution does not provide that the states shall have the ability to determine for whom those Electors will vote. The Twelfth Amendment permits only Electors to cast ballots for President and Vice President and only permits Electors to name in their ballots the person voted for as President and Vice President. The ballots provided by Defendants during the vote at the meeting of Colorado's Electoral college were pre-printed with the names of Hillary Clinton and Timothy Kaine in violation of the Twelfth Amendment because someone other than the Electors named in the ballots the persons each Elector wanted to vote for for President and Vice President. When

Elector Micheal Baca wanted to vote for someone other than Hillary Clinton, he had to cross out Mrs. Clinton's name and write in a different name. For that he was removed from office by Defendants and is being criminally investigated.

66.   The Electoral College would be rendered superfluous and antithetical to the purpose of the Electoral College as articulated by Alexander Hamilton, for if the Electors are merely to vote for the candidate who won the popular vote in their state, then there is no need for the Electoral College at all.

67.   Declaratory relief is necessary to determine whether Defendants can violate Plaintiffs' constitutional rights or chill their exercise of those rights due to the risk of punitive consequence for voting in the broader interest of the country, even if that might not end up aligning with their loyal party affiliation.

68.   This Court can provide declaratory relief because an actual and substantial controversy now exists between Plaintiffs and the Defendants with respect to Plaintiffs' rights and Defendants' rights and duties under C.R.S. §§ 1-4-304 (5) and 1-13-723, and such controversy is capable of repetition, yet evading review.

69.   Plaintiffs' constitutional rights have been directly, substantially, and irreparably violated, affected, and injured unless and until this Court declares the state law requiring Electors to vote consistent with the popular vote in their state, and penalizing an Elector for not doing so, is unconstitutional.

70.   Plaintiffs therefore request a declaratory judgment by this Court that C.R.S. § 1-4-304 and the corresponding penalty for violation thereof in C.R.S. § 1-13-723 are unconstitutional and therefore unenforceable against Plaintiffs or any other presidential Electors.

**SECOND CLAIM FOR RELIEF**
(Deprivation of civil rights, 28 U.S.C. § 1983 against Defendants Williams and Coffman in their individual capacities)

71. Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-70.

72. At all times relevant to this Amended Complaint, Defendants Williams and Coffman were acting under color of state law and through their acts engaged in unlawful intimidation, threatens, and coercion relating to Plaintiffs' voting decision for President and Vice President.

73. Defendants Williams and Coffman deprived Plaintiffs of their rights under Article II, Section 1, of the U.S. Constitution, as amended by the Twelfth Amendment, by failing and refusing to disclaim any intent to criminally prosecute Plaintiffs under C.R.S. § 1-13-723 if they voted for anyone for President and Vice-President other than Clinton and Kaine.

74. Defendants Williams and Coffman deprived Plaintiffs of their rights under18 U.S.C. § 594 by failing and refusing to disclaim any intent to criminally prosecute Plaintiffs under C.R.S. § 1-13-723 if they voted for anyone for President and Vice-President other than Clinton and Kaine.

75. Defendants Williams and Coffman deprived Plaintiffs of their rights under C.R.S. § 1-13-713 by failing and refusing to disclaim any intent to criminally prosecute Plaintiffs under C.R.S. § 1-13-723 if they voted for anyone for President and Vice-President other than Clinton and Kaine.

76. C.R.S. §§ 1-4-304 and 1-13-723 do not serve any significant governmental interest, and are neither narrowly tailored or the least restrictive means to accomplish any governmental purpose sought to be served by the legislation.

77. Plaintiffs' rights to be free from intimidation, treats, and coercion in the process of voting is a clearly established right.

78. Plaintiffs were harmed as a result of this conduct, including through the deprivation of constitutional rights, and otherwise as according to proof at trial.

79. Defendants' conduct was a substantial factor in causing harm to Plaintiff.

80. Plaintiff additionally seek compensation for reasonable attorney's fees and costs under 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
(Deprivation of civil rights, 28 U.S.C. § 1983-prospective injunctive relief against all defendants)

81. Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-80.

82. C.R.S. §§ 1-4-304 and 1-13-723 are unconstitutional on their face and as threatened to be applied, infringing Plaintiff's duties and rights as a presidential Elector under Article II, Section 1, of the U.S. Constitution, as amended by the Twelfth Amendment.

83. C.R.S. §§ 1-4-304 and 1-13-723 are unlawful and in violation of 18 U.S.C. § 594 on their face and as threatened to be applied.

84. C.R.S. §§ 1-4-304 and 1-13-723 are in violation of C.R.S. § 1-13-713 on their face and as threatened to be applied

85. C.R.S. §§ 1-4-304 and 1-13-723 do not serve any significant governmental interest, and are neither narrowly tailored or the least restrictive means to accomplish any governmental purpose sought to be served by the legislation.

86. Plaintiffs seek injunctive relief to prohibit Defendants from intimidating, threatening, and/or coercing Plaintiffs or other presidential Electors in how they vote for President and Vice President.

## FOURTH CLAIM FOR RELIEF
(Deprivation of civil rights, 28 U.S.C. §1983 – Equal Protection)

87. Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-86.

88. Under 18 U.S.C. § 594, Plaintiffs and all other presidential Electors have the right to be free from intimidation, threats, and coercion in placing their votes for the offices of President and Vice-President.

89. Plaintiffs, however, have been denied equal protection under the law by Defendants who have failed and refused to disclaim any intent to criminally prosecute Plaintiffs under C.R.S. § 1-3-723 if Plaintiffs voted for anyone for President and Vice-President other than Clinton and Kaine.

90 Unbound Electors in the various states are free to vote for President and Vice-President for any person and are not required under threat of criminal prosecution to vote for the popular vote winner in their states.

91. Plaintiff seeks injunctive relief to prohibit Defendants from intimidating, threatening, and/or coercing Plaintiff or other presidential Electors in how they vote for President and Vice President.

92. Plaintiffs additionally seek compensation for reasonable attorney's fees and costs under 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs ask the Court to:

A. Enter an order declaring C.R.S. § § 1-4-304 and 1-13-723 unconstitutional under Article II, Section 1, Amendment I, Amendment XII, and Amendment XIV of the U.S. Constitution;

B. Enter an order declaring C.R.S. §§ 1-4-304 and 1-13-723 in violation of 18 U.S.C. § 594 and in violation of Plaintiffs right to equal protection of the law;

C. Enter an order permanently enjoining the Defendants from removing and/or replacing any presidential Elector who votes for a presidential or vice presidential candidate who did not receive the highest number of votes in a general election in Colorado immediately preceding the convention of the Electors and enjoining Defendants from prosecuting any presidential Elector on the basis of their vote for a presidential or vice presidential candidate;

D. Enter an order finding some or all of Defendants have violated Plaintiffs constitutional rights;

E. Judgment for their costs and reasonable attorney's fees and under 42 U.S.C. § 1988; and

F. For all such other relief as the Court deems just and proper.

Respectfully submitted this 28th day of February 2017.

By: */s/ Jason B. Wesoky*
Jason B. Wesoky, Esq.
1331 17th Street, Suite 800
Denver, CO 80202
Phone: (303) 623-9133
Fax: (303) 623-9129
E-mail: jason.w@hamiltondefenders.org

*Attorney for Plaintiffs*